Matthew **FOWLER**, Appellant,

v.

**STATE** of **Indiana**, Appellee.

No. 1184S439.

Supreme Court of Indiana.

Oct. 11, 1985.

Rehearing Denied Dec. 5, 1985.

Stephen A. Oliver, Martinsville, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a jury conviction for murder, a class A felony, Ind. Code § 35–42–1–1(1) (Burns 1985 Repl). Defendant-appellant, Matthew Fowler, was sentenced to a prison term of thirty years.

Appellant raises three issues on appeal: (1) whether appellant's waiver of rights was effected in accordance with the required juvenile procedural safeguards; (2) whether appellant's confession was voluntarily made; (3) whether the trial court erred by denying appellant's tendered voluntary manslaughter instruction.

These are the facts which tend to support the determination of guilt. On February 15, 1984, Patricia Fowler, appellant's mother, informed Sheriff Mason that her neighbor, Lloyd Young, was dead. Mason asked Terry Widdle, the County coroner, to investigate Young's death. After the coroner observed two broken doors, a shell casing lying on the living room floor, and a pool of blood under the victim's head, he informed Mason that a probable homicide had been committed. Mason directed Detectives Betts and Bauer to canvass the neighborhood to talk with neighbors.

On February 15th, the police interviewed the Fowler family as part of the neighborhood canvassing, and because Mrs. Fowler reported the crime. She informed Detective Bauer that she and her son, appellant Matthew Fowler, had heard gun shots. However, Matthew was not home at this time. The police therefore requested and received permission from William Fowler, appellant's father, to talk with appellant later that evening. Because of inconsistencies between appellant's first statement and information received from interviewing other persons, the police spoke to appellant again on February 19th, at noon.

After appellant's second statement, the Fowler's consented to a police search of their property. The subject of this search was a .22 rifle, the suspected murder weapon, which the police recovered from a spill pipe 700 feet west of the Fowler's home at their pond. While appellant was aware of police discovery of this rifle, the police did

not inform the Fowlers where they found the gun. In appellant's confession given on February 20th, appellant described to police the exact location where he hid the rifle.

After recovering the rifle, a third police interview was held at the Fowler residence. A polygraph was scheduled for the following day, February 20th, and this examination culminated in appellant's confession. Appellant stated he shot Young because of an argument over a hay transaction. Appellant attempted to make it look like a robbery by kicking in both doors and taking the victim's money. He then hid the rifle in the drain pipe of their pond. After appellant's confession he was arrested for murder.

I

Appellant argues his waiver of rights was not effected in accordance with the required juvenile procedural safeguards and therefore the trial court erred by denying the motion to suppress all statements taken from appellant. Appellant, a juvenile, maintains he was not provided with a meaningful opportunity for parental consultation prior to waiving his rights and making his statements. Specifically, the alleged error regarding statements one, two, and three is procedural: appellant was not provided an opportunity for parental consultation. While appellant acknowledges he was offered the opportunity for parental consultation prior to making statement four, he argues the location where the consultation was held made the opportunity meaningless.

■ On February 15th, the police investigation included interviews with the victim's friends, neighbors, and relatives. Officer Bauer interviewed the entire Fowler family except for appellant, who was not home at this time. Bauer asked for and received permission from Mr. Fowler to interview appellant later that day. Appellant was not accompanied by his parents when he came down to the police station, although Bauer had asked appellant to bring his father. The police did not suspect appellant at this time. Appellant was not advised of his *Miranda* rights prior to police questioning. At this interview appellant stated he had finalized a hay transaction with the victim and that he was at the victim's house the night before the murder. Appellant then left the police station. This was a noncustodial, investigatory police interview which was not required to be preceded by an advisement of rights, *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, or the additional procedural safeguards accorded juveniles, *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138.

Police learned from interviewing others that the hay transaction had not been finalized and appellant was not at the victim's house the night before. A second interview was deemed necessary because of these inconsistencies. On February 19th, at 12:05 p.m., the police took an additional statement from the Fowler family at the police station. First Mrs. Fowler and sister Mary gave a joint statement to the police. Second, appellant's father gave his statement. The police then brought appellant and his mother into the conference room to join his father. The police advised both appellant and his parents that appellant was now considered to be a suspect but that he was not under arrest and could leave at any time. After advising appellant of his *Miranda* rights, appellant and his parents signed a standard waiver form. The police remained in the room while the Fowler family read and signed the waiver form. Immediately after the waiver was signed, police interrogation commenced. The police confronted appellant with the inconsistencies flowing from his February 15th statement. Appellant then admitted he had lied and had not yet finalized the hay transaction.

The police obtained consent from the Fowlers to search their property. The decedent's .22 rifle, the suspected murder weapon, was found approximately 700 feet west of the Fowler home in a spill pipe on their pond. After recovering the rifle, Mason asked whether appellant and his father

would talk to police again. This third police interrogation was conducted in a police car parked in the Fowler driveway. The police advised appellant and his father of appellant's *Miranda* rights. The police (Mason, Betts and Bauer) did not leave the car before father and son signed the waiver. Before conversing with father and son, Mason directed the other deputies who had aided in the search to leave the premises. The information provided in this third statement did not conflict with previous statements made. Mason asked only whether appellant had previously seen the .22 rifle, to which appellant responded affirmatively.

▬ In neither the second nor the third interview was appellant in custody. To be custodial in the nonarrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *Staton v. State* (1981), Ind. 428 N.E.2d 1203. Here appellant was told by the police that he was not under arrest and that he was free to leave at any time. In addition, after both the second and third interviews appellant was not detained by the police. Rather, appellant left the police station and the police car, after the second and third interviews, respectively, and resumed his daily activities. The circumstances under which these two interviews took place, irrespective of the decision of the police officers to extend the procedural safeguards of *Miranda* to appellant, support only the conclusion that they were non-custodial. Any failure therefore of the police interrogators to employ the special procedural safeguards required by *Lewis* would not render the product of the interviews inadmissible.

▬ Appellant argues his confession obtained on February 20th was also not preceded by a valid waiver. He maintains that while he was provided with an opportunity for parental consultation prior to waiving his rights, the opportunity provided was not meaningful because of a lack of privacy. Appellant claims the location of the parental consultation was analogous to a fish bowl and was tainted by pressure resulting from police presence.

Sheriff Mason asked polygraph examiner Coffin to question appellant regarding the inconsistencies in appellant's earlier statements. Coffin gave a polygraph consent form and a juvenile warning and rights waiver form to appellant and his mother, who were sitting in the laboratory reception area with appellant's sister Mary. Coffin advised them that after they had some time alone to read and review the forms, he would return and answer any questions. The juvenile waiver signed by both appellant and his mother includes a provision which recites that the parent and juvenile were provided with the opportunity to talk in private before deciding to make this statement.

▬ Appellant claims he was not able to talk to his mother because too many people were coming and going through the reception area. The laboratory reception area is a separate section of the police post which is not accessible to the general public. While the Fowlers were left alone in the reception room Coffin stood on the other side of a sliding glass window affixed to the reception room. The mother does not recall if Coffin was there during the entire parental consultation because she was reading the forms. Appellant did not see Coffin because appellant was facing the opposite direction. The level of privacy accorded appellant and his mother for their consultation was sufficient to permit discussion on the waiver decision. Once the police have afforded the opportunity for parental consultation, the utilization of this opportunity for consultation and the nature of the discussion by the parent and juvenile is within their discretion. *Buchanan v. State* (1978), 268 Ind. 503, 376 N.E.2d 1131.

## II

Appellant argues his confession was not voluntarily made and therefore should have been suppressed. He claims the police specifically promised both mitigation and aggravation of punishment if appellant did not cooperate.

When Coffin returned to the polygraph room after evaluating appellant's examination, he found appellant crying. Coffin confronted appellant with the polygraph results which indicated appellant had lied. Coffin then stated that appellant shot Lloyd either purposefully or accidentally. Appellant nodded his head affirmatively. Before Mason, whom appellant verbally confessed to, arrived at the polygraph room, Coffin made the following two challenged statements. First, the degree of appellant's cooperation might affect whether appellant is charged as an adult. Second, the judge is more likely to try to help a sincere rather than an abusive defendant.

■ A confession is inadmissible when obtained by a promise of immunity or mitigation of punishment. *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192. The relevant inquiry is whether the challenged police conduct induced a confession which was not freely self-determined. At the suppression hearing appellant testified that any coercion was derived from his father, not the police. In any event, appellant voluntarily admitted his guilt by nodding his head before the alleged inducements. When appellant made his verbal confession subsequent to the alleged inducements the proverbial cat had already been let out of the bag. Moreover, vague and indefinite statements by the police which indicate it is in appellant's best interest to cooperate or to tell the real story are not sufficient inducements to render his subsequent confession inadmissible. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188.

### III

Appellant and the State both tendered to the trial court a voluntary manslaughter instruction. The trial court refused appellant's tendered instruction but charged the jury with the State's instruction. Appellant maintains both instructions were necessary to provide the jury with a complete statement of the law. He contends the trial court's refusal of his instruction was therefore in error.

■ To determine whether error resulted from the refusal of tendered instructions, we must consider whether: (1) the tendered instruction correctly states the laws, (2) there is evidence to support the giving of the instruction, and (3) the substance of the tendered instruction is covered by other instructions which were given. *Armour v. State* (1985), Ind., 479 N.E.2d 1294.

■ Appellant's tendered instruction number six recites as follows:

All that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment or terror as may be sufficient to obscure reason of an ordinary man and to prevent deliberation and premeditation, to exclude malice and to render defendant incapable of cool reflection.

The state's voluntary manslaughter instruction, in pertinent part, charged the jury:

The law does not recognize the use of words alone as sufficient provocation to reduce an offense from murder to manslaughter, the other essential elements of the crime of murder being present. Before provocation would be sufficient the person killed must be doing some act which at the time is of such a character that so inflames the mind and excites sudden and angry passions of the one who does the killing that he does not act with deliberation, but that his mind is in a heat of passion whereby he is incapable of deliberation or reason.

Words alone do not constitute sufficient provocation to reduce a murder offense to voluntary manslaughter. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153; *Warren v. State* (1963), 243 Ind. 508, 188 N.E.2d 108. *Murphy v. State* (1869), 31 Ind. 511. Since appellant's instruction permitted the inference that words alone would be sufficient provocation, the trial

court properly refused appellant's instruction.

Judgment affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.