**Robert Wayne GRASS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 87S00–8904–CR–255.

Supreme Court of Indiana.

April 23, 1991.

J. William Bruner, Boonville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Murder. Appellant was sentenced on Count I to a term of fifty-five (55) years and on Count II to forty-five (45) years, with the sentences to run consecutively.

The facts are: On Wednesday, May 11, 1988, appellant was suspended from school for five days due to fighting with other students. His father was notified of his suspension, and appellant was grounded for the duration of the suspension. Appellant lived in a mobile home with his father, stepmother, siblings, and his step-grandmother. The day after the suspension, appellant's father admitted himself into a veteran's hospital in Illinois due to depression and stress.

On Friday, May 13, 1988, appellant stayed home with his stepmother, Cindy, and her mother, Edith Maxey, while his two brothers, Craig and Rodney, went to school. Following school, Craig and Rodney checked in at home, then left to play

with friends. They observed appellant dressed in gray shorts and a tank top. When Craig and Rodney returned home a few hours later, appellant had just showered and was preparing to go out for the evening. Appellant informed them that Cindy and Edith had left for the weekend to visit the boys' father in the hospital. However, neither Cindy nor Edith had mentioned leaving.

During the weekend, Craig and Rodney went about their business but did notice that the bedrooms in the mobile home were in disarray. On Sunday, May 15, 1988, Craig was searching for an attachment to his BB gun in a closet when he discovered his grandmother's body. The police were notified, and later that afternoon, Cindy's body was discovered under a bunk bed. Autopsies revealed that Edith's death was caused by having bled to death due to a severed right carotid artery due to a slit in her throat. Cindy's death was due to strangulation. An electrical cord was wrapped around her neck and a sock was stuck in her mouth. The gray shorts and tank top appellant had worn on May 13 had blood on them, and testing of the blood showed it to be consistent with Edith's.

Appellant contends the trial court erred in admitting State's Exhibit No. 90, a letter of suspension from Castle High School. In addition, he contends evidence of fights at school, which precipitated his suspension, and of a fight at the jail was erroneous.

■ Appellant argues the evidence of prior offenses was inadmissible to prove his guilt as to the crimes charged because it did not show motive, identity, common scheme or plan. The State argues that this evidence was admissible to show motive and intent.

In the instant case, evidence was disclosed which showed that appellant had been in two fights at school in which bodily injury occurred to both victims just a few weeks prior to the murders. In addition, while appellant was in jail, after the murders, he got into a fight, without provocation, with an inmate.

Even if we presume for the sake of argument that the admission of this evidence

was error, it was harmless error. The evidence in this case, excluding the above, is so overwhelming that it is unrealistic to believe evidence of appellant's unconnected conflicts could have unduly influenced the jury. *Brown v. State* (1987), Ind., 512 N.E.2d 173.

■ Appellant contends the trial court erred when it permitted testimony of Officer Casey concerning statements given by appellant to a newspaper reporter. Appellant contends the testimony was inadmissible because he was seventeen years of age and was not given an opportunity to talk with his lawyer or his guardian *ad litem*, as required by Ind.Code § 31-6-7-3, and was not read his *Miranda* rights.

The issue is whether a custodial interrogation took place. Appellant desired to speak to the reporter and requested to do so. He was advised by Officer Hargrave that he should consult his attorney before he spoke with the reporter. Appellant indicated that he did not intend to tell them everything. Thus the statements made by appellant were volunteered and not the result of police interrogation. A similar issue was raised in *Poling v. State* (1987), Ind., 515 N.E.2d 1074, *cert. denied*, (1989), 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161. In *Poling*, the defendant, age 17, argued that statements made were inadmissible because he was denied access to an attorney and did not have an opportunity to a meaningful consultation with his mother before making the statements. We found that:

> "Poling's statements were not the result of custodial interrogation, but were volunteered. There is no conflict in the fact that Poling volunteered the oral statements with no prompting from the police officers. *Miranda* and *Lewis* [*v. State* (1972), 259 Ind. 431, 288 N.E.2d 138] are not therefore applicable." *Id.* at 1078.

In the instant case, we find that the statements made were voluntary and not made as a result of custodial interrogation. Therefore the testimony of Officer Casey was proper. We would further note that

the statements testified to by Officer Casey were in no way incriminating. They reflected appellant's explanation of his innocence.

Appellant contends the trial court erred when it admitted in evidence a taped interview of him taken on May 15, 1988, by detective Heilman.

During the investigation of the finding of Edith Maxey's body, but prior to the discovery of Cindy Grass' body, Officer Heilman questioned appellant, but he was not a suspect. In fact, all three Grass boys were taken to the sheriff's department until the welfare department could be notified. During the interview, which was recorded, appellant stated that Cindy had talked with the hospital and then he overheard Cindy and Edith say they were going to leave.

■ At trial, this tape was admitted in evidence and counsel did not object to its admission. Where no objection is made at the time the evidence is offered at trial, the issue is waived on appeal. *See Killion v. State* (1984), Ind., 464 N.E.2d 920. Appellant has waived this argument regarding the taped statement.

■ Even assuming for the sake of argument that appellant did not waive this issue, we find it to be without merit. A case analogous to the instant case is *Fowler v. State* (1985), Ind., 483 N.E.2d 739. In *Fowler* we stated:

"In neither the second nor the third interview was appellant in custody. To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. (Citation omitted). Here appellant was told by the police that he was not under arrest and that he was free to leave at any time. In addition, after both the second and third interviews appellant was not detained by the police. Rather, appellant left the police station and the police car, after the second and third interviews, respectively, and resumed his daily activities. The circumstances under which these two interviews took place, irrespective of the decision of the police officers to extend

the procedural safeguards of *Miranda* to appellant, support only the conclusion that they were non-custodial. Any failure therefore of the police interrogators to employ the special procedural safeguards required by *Lewis* would not render the product of the interviews inadmissible." *Id.* at 743.

In the instant case, appellant was not a suspect nor was he in custody at the time of the interview with Heilman. Appellant and his brothers were at the sheriff's department on a temporary basis. We find no error.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

In this case, Officer Heilman interrogated appellant Grass, a juvenile, at the stationhouse with respect to his knowledge of the circumstances surrounding the death of his grandmother. Appellant gave a statement which was recorded and which was admitted at trial against him without objection. This interrogation was not preceded by an advisement of rights, *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, or a tender of the additional procedural safeguards accorded juveniles, *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138. The interrogator testified that at the time appellant gave the statement, he was being held for an uncertain period of time until an adult from the Department of Welfare could be notified and come and take control of him and that he was not then a suspect. This is a quite different set of circumstances from that present in *Fowler v. State* (1985), Ind., 483 N.E.2d 739, where a juvenile was interrogated in the police station with his parents present, was told that he was free to leave at any time, and in fact did leave after giving a statement. Here we do not know what appellant was told about his care and custody. Because there was no objection

to the admission of the statement at trial, it is quite obvious that there was no trial court determination, based upon relevant facts and circumstances, of the question of whether this statement was the product of custodial interrogation and thus inadmissible in the absence of an advisement of rights and an appropriate waiver of those rights. In light of the aforesaid consideration, I am not prepared to say that this statement would have been admissible had there been a proper objection to its admission at trial and a hearing conducted upon the gravamen of such a proper objection.