# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK J. DOVE**
Dove & Dillon, P.C.
North Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
**AARON SPOLARICH**
Deputy Attorneys General
Indianapolis, Indiana



**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANA L. LEWIS, JR., | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1106-CR-276 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1004-FA-144

**May 14, 2012**

**OPINION – FOR PUBLICATION**

**BRADFORD, Judge**

# INTRODUCTION[1]

Appellant-Defendant Dana L. Lewis, Jr. appeals from the trial court's denial of his motion to suppress statements he made to Jennings County Sheriff's Sergeant Karen McCoy during a police interview regarding an alleged sex crime. Lewis argues that the statements were obtained in violation of his Fifth Amendment right to counsel, which he claims he unequivocally and unambiguously invoked by asking, "Can I get a lawyer?". Lewis contends that this question was sufficient, both standing alone and in light of the totality of the circumstances, to invoke his Fifth Amendment right. The State argues that Lewis was not entitled the right to counsel because his interview with Sergeant McCoy did not constitute a custodial interrogation. We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On April 25, 2010, Lewis, then age twenty-two, was invited by Sergeant McCoy to the Jennings County Sheriff's Department to be interviewed regarding an alleged sex crime involving a thirteen-year-old female victim. When Lewis arrived, Sergeant McCoy informed Lewis that he was not under arrest and that he was free to leave at any time. The interview took place in a locked room, and Sergeant McCoy also informed Lewis of his *Miranda* rights, which Lewis acknowledged understanding. Sergeant McCoy then began questioning Lewis about the alleged crime, and the following exchange occurred after approximately ten minutes:

---

[1] We held oral argument in this case on April 30, 2012, at Shortridge High School in Indianapolis. We wish to thank counsel for the quality of their advocacy and the students, faculty, and staff of Shortridge for their assistance and hospitality.

[McCoy]: The thing is, is we can, I've got certain things that I know that.[] I know she had sex and there's been, by law I had to do DNA swabbing when this happened. I had to do that.

[Lewis]: Yeah.

[McCoy]: So, what's going to happen is and I don't see, well, she knows that the DNA swabbing, okay she, since you've already been here, we already have your,

[Lewis]: You've already got my DNA.

[McCoy]: Right, and she knew when I took that from her, that she knew who's [sic] DNA [that's] going to show, so there's no reason to lie to me.

[Lewis]: She knows who it is, you know what I mean.

[McCoy]: Right. Okay, so, let me put it to you this way, the testing came back with DNA with your DNA,[2] okay, just hear me out. That's why I'm saying, let's not prolong this and make this a, let me finish, let me finish. Let's not make this into a huge ordeal.

[Lewis]: Okay.

[McCoy]: The thing that I need to know is whether or not it was consensual or not, whether you forced it. If it was consensual, you know, we just make a day of it.[3] Okay?

[McCoy]: Yeah.

[McCoy]: That's why I just want you to be honest with me. That way we're not here and trying, let's just make it a done deal and be done with it, everybody just, [our day's] over. Okay? So, if you had consensual sex because, then this is going to go into a long drawn out thing, okay because,

[4]Lewis: Can I [get] a lawyer?

---

[2] Sergeant McCoy acknowledged at the suppression hearing that the State had not, in fact, recovered Lewis's DNA from the victim.

[3] Several times during the interview, Sergeant McCoy made statements that we see as strongly implying that Lewis would not be prosecuted if the alleged sexual contact with the alleged victim had been consensual. For Class A felony child molesting, the consent of the victim is, of course, irrelevant. In our view, Sergeant McCoy's statements came close to being promises of leniency, which may not be used to extract or induce a confession. "A confession is inadmissible when obtained by a promise of immunity or mitigation of punishment. The relevant inquiry is whether the challenged police conduct induced a confession which was not freely self-determined." *Fowler v. State*, 483 N.E.2d 739, 744 (Ind. 1985) (citation omitted).

[4] The first part of this passage is drawn from the transcript of the suppression hearing as State's Exhibit 1, a video recording of the interview, was published. The portion following footnote 4 in the text is drawn from the trial court's order, which varies slightly from the same passage as it appears in the transcript. In particular, the transcript of the hearing does not have Lewis saying "all right" when told that he could have a lawyer. Based upon our review of the video recording of the interview, we conclude that the partial transcription in the trial court's order, which the trial court presumably generated following its own review, appears generally to be the more complete and accurate. That said, our review of the video recording also confirms that Lewis very clearly asked if he could "get" a lawyer, not if he could "have" a lawyer, as indicated in the trial court's order.

McCoy:  Sure, you can get a lawyer sure absolutely.
Lewis:  All right.
McCoy:  But if it's consensual Dana, you know like I said teenagers make these accusations of force all the time.
Lewis:  Yeah.
McCoy:  OK but if you didn't force her, and she consented to this that's a whole different ballgame that I can work with.
Lewis:  I understand.
McCoy:  That's..
Lewis:  Okay I understand.
McCoy:  …so if you want to get this cleared up today that's up to you, I don't want to drag this out.
Lewis:  I'm not under arrest or nothing?
McCoy:  You're not under arrest at this time.
Lewis:  It was consensual.
McCoy:  It was consensual.
Lewis:  I'm not going to lie to you Karen.

Tr. pp. 16-17; Appellant's App. pp. 16-17.

Lewis continued to disclose details about the alleged crime for approximately five minutes; then, Sergeant McCoy and Lewis conversed as follows:

McCoy:  And you're okay talking about this without a lawyer?  That's right, correct?
Lewis:  As long as I'm not going to get in trouble or anything?
McCoy:  Well you're not under arrest right now, we're talking about it. You [k]now what I mean.
Lewis:  Well am I going to be under arrest.
McCoy:  That's not up to me but if it's consensual I have to make a call but many times I have to deal with this consensual stuff..and

Appellant's App. p. 17.[5]

Lewis was arrested two days later and charged with Class A Felony Child Molesting.[6]  On August 5, 2010, Lewis filed a motion to suppress his interview

---

[5]  For the same reasons mentioned in footnote 3, this passage is drawn from the partial transcription contained in the trial court's order.

[6]  Ind. Code. § 35-42-4-3 (2009).

statements to Sergeant McCoy, arguing that they were obtained in violation of his Fifth Amendment right to counsel. A suppression hearing was held on the issue, where both parties stipulated that "Lewis reasonably believed that he was in a custodial interrogation and was not free to leave." Appellant's App. p. 33. Sergeant McCoy testified that the inflection in Lewis's voice when he asked, "Can I get a lawyer?" made his question "seem[] like he was trying to clarify if he was allowed to have an attorney." Appellant's App. p. 36.

The trial court reviewed the videotaped interview and found that Sergeant McCoy "answered [Lewis's question] honestly, but before addressing it any further … she proceeded to hurriedly extract a confession[.]" Appellant's App. p. 18. The trial court also accepted the parties' stipulation that Lewis "reasonably believed he was in custody at the time he was at the Jennings County Sheriff's Department … as he was in a locked secure room … and not free to leave." Appellant's App. p. 16. Ultimately, the trial court denied Lewis's motion: "Taken as a whole, this Court cannot say that Defendant's question, 'Can I have a lawyer?' was an unambiguous or unequivocal request or demand for an attorney." Appellant's App. p. 18. The trial court's denial is now before this court on Lewis's interlocutory appeal.

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Denying Lewis's Motion to Suppress the Statement He Made to Sergeant McCoy

We review the denial of a motion to suppress "in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting

evidence most favorable to the ruling. Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the ruling but also the uncontested evidence favorable to the defendant." *Gunn v. State*, 956 N.E.2d 136, 138 (Ind. Ct. App. 2011).

"The right to have counsel present during [custodial] interrogation 'is indispensible' to the protection of the Fifth Amendment privilege against self-incrimination." *Jolley v. State*, 684 N.E.2d 491, 492 (Ind. 1997) (quoting *Miranda v. Arizona*, 384 U.S. 436, 469 (1966)). "When a suspect asserts his right to counsel during custodial questioning, the police must stop until counsel is present or the suspect reinitiates communication with the police and waives his right to counsel." *Id.* at 492 (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). Importantly, "the prosecution may not use statements stemming from that interrogation unless it demonstrates the use of procedural safeguards effective to secure [the suspect's] privilege[.]" *Davies v. State*, 730 N.E.2d 726, 733 (Ind. Ct. App. 2000) (citing *Miranda*, 384 U.S. at 444), *trans. denied*.

## A. Whether Lewis was in Custody

As an issue preliminary to Lewis's appellate claims, the State asserts an alternative basis for the trial court's denial of Lewis's motion to suppress. "The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court." *Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008). The State argues that Lewis was not entitled to counsel because he was not "in custody" when he made his statements to Sergeant McCoy.

6

Therefore, Lewis's question, "Can I get a lawyer?" even if unambiguous and unequivocal, did not require that Sergeant McCoy cease her questioning.

"*Miranda* and its progeny have ruled that the [Fifth Amendment] right to counsel … accrues upon 'custodial interrogation.'" *Zook v. State*, 513 N.E.2d 1217, 1220 (Ind. 1987) (quoting *Miranda*, 384 U.S. at 444). This is because the right is "meant to overcome [that] inherently coercive and police dominated atmosphere[.]" *Davies*, 730 N.E.2d at 733 (citing *Miranda*, 384 U.S. at 444). "'Custodial interrogation'" has been explained to mean "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Zook*, 513 N.E.2d at 1220 (quoting *Miranda*, 384 U.S. at 444). "A defendant is in custody if he is formally arrested or is subjected to restraints on his freedom such that a reasonable person in defendant's position would believe he is not free to leave." *Davies*, 730 N.E.2d at 733. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The State argues that its stipulation that "Lewis reasonably believed that he was in a custodial interrogation" does not address the objective standard of what a reasonable man in the suspect's position would have understood. Appellant's App. p. 16; *see Miller v. State*, 846 N.E.2d 1077, 1081 (Ind. Ct. App. 2006) ("Whether an individual is determined to be 'in custody' requires application of an objective test that asks whether a reasonable person under the same circumstances would believe that he was under arrest

7

or not free to resist the police."), *trans. denied*. Therefore, the State argues, the stipulation as to Lewis's subjective belief has no bearing on this issue. We cannot agree.

We conclude that the stipulation below now binds the State on the question of whether Lewis was in custody. First, we note that the stipulation was not that Lewis *subjectively* believed himself to be in custody, but that he *reasonably* believed himself to be in custody. In our view, given that the standard is one of reasonable belief, the use of the word "reasonably" sufficiently invokes the proper objective standard. Moreover, it seems abundantly clear that the State intended to stipulate that Lewis was in custody, regardless of the wording of the stipulation. Finally, it is entirely possible that Lewis (or indeed, the State) could have come forward with additional evidence touching on the issue of custody, but did not do so due to the stipulation. It could potentially be extremely unfair to one party or the other to now address the issue on the merits. We conclude that the stipulation that Lewis reasonably believed himself to be in custody forecloses evaluation of the custody issue on appeal.

### B. Invocation of Right to Counsel

Lewis argues that his question, "Can I get a lawyer?" was an invocation of his Fifth Amendment right to counsel and required Sergeant McCoy to cease her questioning. "Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "[W]hile the suspect need not invoke any magic words," *Jolley*, 684 N.E.2d at 492 (citing *Davis* 512 U.S. at 459), "[t]he cessation of police questioning is not required

8

'if a suspect makes a reference to an attorney that is ambiguous or equivocal[.]'" *Carr v. State*, 934 N.E.2d 1096, 1102 (Ind. 2010) (quoting *Davis* 512 U.S. at 459). A statement is considered ambiguous or equivocal when "'a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel.'" *Id.* (quoting *Davis* 512 U.S. at 459).

Lewis contends that his question, "Can I get a lawyer?" constituted an unequivocal invocation of his Fifth Amendment right to counsel. We agree. Lewis relies primarily on *United States v. Lee*, in which the United States Court of Appeals for the Seventh Circuit determined a suspect's question, "Can I have a lawyer?" to be "similar to [other] statements recognized by th[e] court as proper invocations of the right to an attorney."[7] 413 F.3d 622, 626 (7th Cir. 2005). The *Lee* court concluded, "unless the police obtained further clarification from [the suspect] that this was actually an unequivocal request for an attorney, they should have halted the interrogation." *Id.* We see no reason to depart from the *Lee* court's holding in this case, which involves an essentially identical question posed by the defendant. Much as the question, "Can I get the car tonight?" would be universally understood as a request to borrow the car tonight, and not as a theoretical question regarding one's *ability* to borrow the car tonight, we have little trouble concluding that Lewis's

---

[7] The comparative statements in *Lee* were first recognized in *Lord v. Duckworth*, 29 F.3d 1216 (7th Cir. 1994). There, they were cited from Eleventh and Ninth Circuit cases and included the following: "I think I should call my lawyer"; "I have to get me a good lawyer, man. Can I make a phone call?"; "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?" *Lee*, 413 F.3d at 626 (citing *Lord*, 29 F.3d at 1221).

question would be understood by any reasonable police officer as an unequivocal request for counsel.

The State relies on *Powell v. State*, 898 N.E.2d 328 (Ind. Ct. App. 2008), *trans. denied*, in arguing that Lewis's question, "Can I get a lawyer?" was ambiguous. In *Powell*, a man arrested for drug possession asked, "Could I see about getting a lawyer or something man?" during custodial interrogation. *Id.* at 332. This court concluded that the wording of this question was "ambiguous and not sufficiently clear as to constitute a request for an attorney." *Id.* at 337. *Powell*, however, is distinguishable. First, a great deal of the ambiguity of the suspect's question in *Powell* stems from the use of the verb "could." 898 N.E.2d at 332. "*Can* means 'to be able to' and expresses certainty…. *Could* is better for a sense of uncertainty or a conditional statement." THE CHICAGO MANUAL OF STYLE sec 5.220, at 270 (16th ed. 2010) (emphases added). The use of "could" by the suspect in *Powell*, therefore, may be interpreted as an expression of doubt regarding the suspect's intent to request an attorney, whereas Lewis's use of "can" in asking, "Can I get a lawyer?" is more reasonably interpreted as an intentional request for such. *See Taylor v. State*, 689 N.E.2d 699, 703 (Ind. 1997) (finding the statement, "I guess I really want a lawyer, but, I mean, I've never done this before so I don't know," to be an expression of doubt, not a request); *see also Davis*, 512 U.S. at 462 (finding the statement, "Maybe I should talk to a lawyer" to be an ambiguous request for counsel). Furthermore, the uncertainty of the suspect's question in *Powell* seems to be emphasized by the question's closing phrase,

"or something." 898 N.E.2d at 332. This additional factor is not present in Lewis's question. The State's reliance on Powell is unavailing.[8]

## CONCLUSION

Pursuant to the stipulation entered into by the parties below that Lewis reasonably believed that he was in custody, we will not revisit the issue on appeal. Moreover, the trial court erred in denying Lewis's motion to suppress the statements he made to Sergeant McCoy because Lewis unambiguously and unequivocally invoked his Fifth Amendment right to counsel by asking, "Can I get a lawyer?" We therefore remand with instructions to grant Lewis's motion to suppress statements made during the interview with Sergeant McCoy and for further proceedings.

The judgment of the trial court is reversed and remanded with instructions.

ROBB, C.J., and FRIEDLANDER, J., concur.

---

[8] We need not address Lewis's argument that Sergeant McCoy should have asked Lewis to clarify whether his allegedly ambiguous and equivocal question was intended as an invocation of his Fifth Amendment right to counsel. Lewis concedes that the law currently does not require clarifying questions. However, he asserts that the Indiana Supreme Court has adopted the U.S. Supreme Court's position concerning good police practice and the use of clarifying questions, *see Jolley*, 684 N.E.2d at 492 (citing *Davis* 512 U.S. at 461), and he urges this court to declare the practice mandatory on public policy grounds. Having concluded that Lewis's question was an unequivocal request for counsel, we need not address this argument but merely observe, as the United States Supreme Court has, that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Davis*, 512 U.S. at 461.

11