

FILED

Jul 25 2013, 6:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A04-1209-CR-464 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-1102-FA-977

**July 25, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Jason King appeals his conviction of and sentence for attempted murder for shooting Woodrow McGuire in the face at a South Haven nightclub. During a recorded interrogation regarding the crime, King uttered the words, "an attorney," in a sentence otherwise inaudible on the recording. The interrogating officer continued to question King, and he eventually confessed to shooting McGuire.

At trial, King orally moved to suppress evidence regarding his confession, claiming it was obtained in violation of his right to counsel. A hearing was held on King's motion, at which King testified that the inaudible sentence was, "I do need to make a call to call an attorney." The interrogating officer also testified, stating that King asked, "Am I going to need an attorney?" The trial court found the latter to be more consistent with what it heard on the recording and denied King's motion to suppress. Accordingly, Appellee-Plaintiff the State of Indiana presented the jury with the testimony of the interrogating officer, who stated that King confessed to shooting McGuire during the interrogation. King did not object to the admission of this evidence.

On appeal, King argues that the trial court clearly erred in finding that he asked, "Am I going to need an attorney?" during the interrogation. We disagree, concluding that the trial court's finding is supported by the record. King also argues that the court abused its discretion in denying his motion to suppress his confession. Because King failed to contemporaneously object to the admission of testimony regarding his confession, we conclude that King has waived his abuse of discretion argument for appeal. Waiver

2

notwithstanding, we conclude that the question, "Am I going to need an attorney?" is not an unambiguous and unequivocal request for counsel, and therefore, that the trial court did not abuse its discretion in denying King's motion. King further argues that his forty-five year sentence is inappropriate in light of the nature of his offense and his character. We disagree and affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On the night of February 3, 2011, McGuire visited the Jim Beam Warehouse,[1] a South Haven nightclub, with his friend Mariano Luyando. While at the bar ordering beers and conversing with Luyando, McGuire felt someone lean against his back. McGuire turned around and encountered King, whom he did not know. Thinking King might be drunk, McGuire asked if he was alright. McGuire then requested that King move away and stop leaning against him. King, however, continued to lean against McGuire. Eventually, King's brother approached the bar and was told that King was invading McGuire's personal space. King's brother attempted to move King away, and McGuire turned back to the bar. As McGuire turned, he was shot in the jaw. McGuire did not see who shot him, but Luyando witnessed King pull a small gun from his waistband, shoot McGuire, and walk away.

After being shot, McGuire ran to the restroom and used his shirt to stem the bleeding from his jaw. Warehouse security guard Corey Smith had heard the gunshot and followed McGuire into the restroom. McGuire gave Smith a description of King as the likely shooter, and, having received complaints about King earlier that night, Smith recognized King from

---

[1] The nightclub has since dropped the "Jim Bean" designation, and so shall we.

the description. Smith exited the restroom, saw King leaving the Warehouse, and followed him outside. Smith ordered King to stop, but King continued to walk away. Smith eventually grabbed and tackled King, causing a gun wrapped in a black bandana to fall out of King's sweatshirt. Police later learned that the gun was a stolen .22 caliber revolver that contained one spent shell casing.

Smith detained King until police arrived. Porter County Sherriff's Officer Mike Spicer took King into custody and transported him to the Porter County Detective Bureau. En route, King attempted to engage Officer Spicer in conversation. Officer Spicer advised King of his *Miranda*[2] rights and did not ask King any questions. King, however, proceeded to talk, telling Officer Spicer that someone had been shot and that it was in self-defense. King also told Officer Spicer that he needed to contact the "Feds" because he was "valuable." Tr. II, p. 51.

At the Detective Bureau, Porter County Sherriff's Lieutenant Gary Gear advised King of his *Miranda* rights, which King waived, and then questioned King about the shooting. During this recorded interrogation, King admitted to having been at the Warehouse with his brother, and he again stated that he wanted to talk to the "Feds." Tr. II, p. 128. King, however, refused to talk about the shooting. The interview ended when King stated that he wanted to sleep on it and talk with police in the morning.

The following day, Lieutenant Gear and Porter County Sherriff's Captain Jeff Biggs advised King of his *Miranda* rights, which King again waived, and then interviewed King a

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

second time about the shooting. During this recorded interrogation, King was uncooperative but never denied shooting McGuire. Approximately one hour and two minutes into the interrogation ("the 1:02 mark"), King uttered the words "an attorney" in a sentence otherwise inaudible on the recording. In response, one of the interrogating officers replied, "[Y]es, at some point [you] are going to need an attorney." Tr. p. 17. The officers then continued questioning King, who eventually confessed to the shooting.

The following day, at his own request, King was taken back to the Detective Bureau for a third interrogation. Lieutenant Gear advised King of his *Miranda* rights, and King promptly requested an attorney. The interrogation was immediately ceased, and King was returned to jail. The State charged King with: Count I, Class A felony attempted murder; Count II, Class B felony aggravated battery; and Count III, Class D felony possession of stolen property.

King's jury trial commenced on May 21, 2012. At the end of the trial's first day, after the jury had been excused, King's counsel informed the trial court that King had invoked his right to counsel at the 1:02 mark of the second interrogation, yet police continued questioning him. On the second day of trial, before the jury was seated, the court listened to the recording of the second interrogation but could not determine what King said at the 1:02 mark because the audio was unclear. The court stated, "The only [audible] words in my mind are [']an attorney['']." Tr. II, p. 5. Based on this uncertainty, King moved to suppress any evidence concerning statements he made to police after the 1:02 mark of the second interrogation. These include King's confession.

5

The trial court immediately held a hearing on King's motion. King testified that he stated, "I do need to make a call to call an attorney" at the 1:02 mark, Tr. p. 13, while Lieutenant Gear testified that King asked, "Am I going to need an attorney?" Tr. p 17. Comparing this testimony to the recording of the second interrogation, the trial court explained:

> The speech before the words ["]an attorney["] is more consistent with ["]am I going to need an attorney["] than a longer phrase, which is, ["]I do need to make a call to call an attorney.["] It was a very quick set of words that occurred before the two words ["]an attorney.["]

Tr. p. 23. Based on this analysis, the court found that King did not request an attorney at the 1:02 mark and denied King's motion to suppress.

King's trial proceeded, and the State presented the testimony of Lieutenant Gear before the jury. Lieutenant Gear testified that, during the second interrogation, King confessed to shooting McGuire. King did not object to the admission of this testimony at this time. The State also presented the testimony of King's cellmate, Anthony Cilek. Cilek testified that King confessed to shooting a man with a .22 caliber gun at a bar in South Haven. When Cilek asked why King shot the man, King replied, "because he was black." Tr. II, p. 86. Ultimately, the jury found King guilty on Counts I and II but not guilty on Count III. Counts I and II merged, and the trial court sentenced King to forty-five years of incarceration.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Committed Clear Error

King argues that the trial court clearly erred in finding that he asked, "Am I going to

6

need an attorney?" at the 1:02 mark of the second interrogation. We conclude that it did not.

A trial court's finding is clearly erroneous only when the record contains no facts to support it either directly or by inference. *State v. Friedel*, 714 N.E.2d 1231, 1235 (Ind. Ct. App. 1999). Here, the trial court listened to the recording of the second interrogation and found "an attorney" to be the only audible words at the 1:02 mark. Beyond that, the court could only determine, "It was a very quick set of words that occurred before the two words ['an attorney.']" Tr. II, p. 23. The court compared the recording with King's testimony that he stated, "I do need to make a call to call an attorney," Tr. p. 13, and Lieutenant Gear's testimony that King asked, "Am I going to need an attorney?" Tr. p. 17. Based on this review, the trial court concluded: "The speech before the words ['an attorney['] is more consistent with ['am I going to need an attorney['] than a longer phrase, which is, ['I do need to make a call to call an attorney.']" Tr. p. 23. This finding is supported by the record.

## II. Whether the Trial Court Abused its Discretion

King argues that the trial court abused its discretion in denying his motion to suppress evidence regarding statements King made to police after the 1:02 mark of the second interrogation. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* When reviewing a trial court's denial of a motion to suppress, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

7

## A. Waiver

As a threshold issue, the State contends that King did not preserve his abuse of discretion argument because, at trial, he failed to properly object to the admission of Lieutenant Gear's testimony regarding King's confession. It is well-established that a motion to suppress is insufficient to preserve an error for appeal. *Killebrew v. State*, 976 N.E.2d 775, 779 (Ind. Ct. App. 2012). Instead, a defendant must reassert his objection at trial contemporaneously with the introduction of the evidence to preserve the error. *Id.* Here, at the commencement of the trial's second day, King made, and the trial court denied, an oral motion to suppress any evidence regarding statements he made to police after the 1:02 mark of the second interrogation. Later in the trial, however, King did not object when the State presented Lieutenant Gear's testimony that, after the 1:02 mark, King confessed to shooting McGuire. Because King failed to contemporaneously object to the admission of Lieutenant Gear's testimony, we conclude that King has waived this issue for appeal.

## B. Abuse of Discretion

Notwithstanding King's waiver, we conclude that the trial court did not abuse its discretion in determining that King did not request an attorney at the 1:02 mark of the second interrogation. "Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "[W]hile the suspect need not invoke any magic words," *Jolley v. State*, 684 N.E.2d 491, 492 (Ind. 1997) (citing *Davis* 512 U.S. at 459), "[t]he cessation of police questioning is not required 'if a suspect makes a

reference to an attorney that is ambiguous or equivocal….'" *Carr v. State*, 934 N.E.2d 1096, 1102 (Ind. 2010) (quoting *Davis*, 512 U.S. at 459). A statement is considered ambiguous or equivocal when "'a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel.'" *Id.* (quoting *Davis* 512 U.S. at 459).

King claims that his question, "Am I going to need an attorney?" was an unambiguous and unequivocal request for an attorney. We disagree. In *Collins v. State*, we held that the nearly identical question, "Do I need an attorney?" was not a request for counsel but, rather, "merely a question." 873 N.E.2d 149, 156 (Ind. Ct. App. 2007); *accord Bean v. State*, 913 N.E.2d 243, 251 (Ind. Ct. App. 1009) (holding the questions "Do I need an attorney?" "What about an attorney?" and "Should I have an attorney?" not to be invocations of the right to counsel). Like the defendant's question in *Collins*, we conclude that King's question, "Am I going to need an attorney?" does not rise to the level of clarity from which a reasonable officer would understand that an attorney has been requested.

King's reliance on our holding in *Lewis v. State*, 966 N.E.2d 1283 (Ind. Ct. App. 2012), is unavailing. There, we determined the question, "Can I get a lawyer?" to be an unambiguous and unequivocal invocation of the right to counsel. But our conclusion was based on the "universal understanding" of the interrogative phrase, "Can I get," as a request for something rather than a theoretical inquiry regarding one's ability. *Id.* at 1288. This rationale does not extend to King's question. The trial court did not abuse its discretion in denying King's motion to suppress.

### III. Whether King's Sentence Is Inappropriate

King argues that his forty-five year sentence is inappropriate in light of the nature of his offense and his character. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). When conducting our review, we are deferential to the trial court's decision; our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

With regard to the nature of King's offense, the record reveals that King shot McGuire, a total stranger, in the face simply "because he was black" and because he asked King to stop leaning against him. Tr. II, p. 86. The triviality of King's motive is almost as disturbing as the likelihood that his action could have resulted in McGuire's death. Still, McGuire endured multiple surgeries and had his jaw wired shut for nearly three months as a result of his injuries. Further, bullet fragments remain in McGuire's jaw, cannot be removed, and cause him recurrent pain.

With regard to King's character, we find his motive of shooting McGuire "because he

10

was black" to be highly troubling. Tr. II, p. 86. We also highlight King's criminal record as significant. King has three felony convictions: one for Class B felony burglary and two for Class 4 felony possession of a controlled substance (Illinois). King has also been convicted of Class A misdemeanor domestic battery and Class A misdemeanor possession of marijuana. Further, as of July 13, 2012, King has charges pending against him for Class D felony residential entry and Class A misdemeanor resisting law enforcement. In light of these facts, we cannot say that King's forty-five year sentence is inappropriate.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.