

FILED

May 27 2015, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Zachary A. Witte
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Somchanh Amphonephong, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 27, 2015 <br><br> Court of Appeals Case No. <br> 02A03-1402-CR-88 <br><br> Appeal from the Allen Superior Court <br><br> Lower Court Cause No. <br> 02D06-1103-FA-17 <br><br> The Honorable John F. Surbeck, Jr., Judge |

**Pyle, Judge.**

## Statement of the Case

Following a jury trial, Somchanh Amphonephong ("Amphonephong") was convicted of three counts of child molesting, one as a Class A felony and two as

Class C felonies.[1] At sentencing, Amphonephong informed the trial court that he wanted to appeal his convictions. The trial court told Amphonephong that it would appoint appellate counsel, but it failed to do so. Eighteen months later, Amphonephong filed a petition seeking permission to file a belated notice of appeal. The trial court, acknowledging that it had failed to appoint appellate counsel, granted Amphonephong's petition.

[2] On appeal, Amphonephong challenges only his Class C felony child molesting conviction as charged in Count III, arguing that there is insufficient evidence to support the conviction. The State cross appeals the trial court's order granting Amphonephong permission to file a belated notice of appeal. The State acknowledges that Amphonephong was not at fault for the failure to timely file a notice of appeal but contends that we should reverse the trial court's order and remand for a hearing on Amphonephong's petition because: (1) the trial court did not make an express finding that Amphonephong was not at fault and was diligent in his attempt to file the belated appeal; and (2) Amphonephong failed to specifically allege that he was diligent.

[3] Concluding that the trial court did not abuse its discretion by allowing Amphonephong to file a belated notice of appeal and that there is sufficient

---

[1] IND. CODE § 35-42-4-3. We note that, effective July 1, 2014, a new version of the child molesting statute was enacted and that Class A felony child molesting is now a Level 1 felony and Class C felony child molesting is now a Level 4 felony. Because Amphonephong committed his crime in 2011, we will apply the statute in effect at that time.

evidence to support Amphonephong's Class C felony child molesting conviction as charged in Count III, we affirm.

[4] We affirm.

## Issues

[5] 1.  Whether the trial court erred by granting Amphonephong permission to file a belated notice of appeal.

[6] 2.  Whether sufficient evidence supports Amphonephong's Class C felony child molesting conviction as charged in Count III.

## Facts

[7] On June 5, 2010, then five-year-old J.B. spent the night with her aunt, Geri Westmoreland ("Aunt"), who dated and lived with Amphonephong. That night, J.B. got into bed with Aunt and Amphonephong, and she lay down in between them. Aunt was asleep, J.B. was lying on her back, and Amphonephong was lying on his side and facing J.B. when "[h]e put his hands in [J.B.'s] pants" and "in her underwear." (Tr. 148). He touched the "[i]nside" of her "private" that she used to "[p]ee." (Tr. 149). About ten times, J.B. "kept on putting his hands out but he kept on putting his hands back in." (Tr. 149-50).

[8] The next day, J.B. told her Aunt what Amphonephong had done to her. Aunt then asked her other niece, N.B., who was also five years old, if Amphonephong had done anything to her. N.B. indicated that he had touched her and had sexual intercourse with her on more than one occasion when she was four and five years old. After J.B.'s mother learned what had happened,

she called the police. J.B. and N.B. were then interviewed by the Child Advocacy Center, and they each had a physical examination.

[9] The State charged Amphonephong with: Count I, Class A felony child molesting for his act of sexual intercourse against N.B.; Count II, Class C felony child molesting for his act of touching N.B.; and Count III, Class C felony child molesting for his act of touching J.B.

[10] The trial court held a two-day jury trial on June 5-6, 2012. At the beginning of trial, Amphonephong's counsel explained to the jury that Amphonephong was from Laos and that he did not read or write English but understood it.

[11] During the trial, J.B. testified to the facts above, and she testified that she did not remember if Amphonephong's eyes were open or closed. On cross examination, Amphonephong's counsel questioned her about her statements made to the interviewer at the Child Advocacy Center and pointed out inconsistencies between those prior statements and her trial testimony, such as her statements that she tried to pull his hands out of her pants only once and that he was sleeping when he touched her. J.B. acknowledged that she had made those statements to the interviewer. During closing arguments, Amphonephong's counsel argued that there was no evidence that Amphonephong knowingly touched J.B. because she had said that he was asleep. The jury found Amphonephong guilty as charged on all counts.

[12] Thereafter, on July 2, 2012, the trial court held a sentencing hearing and imposed a thirty (30) year sentence for Amphonephong's conviction on Count

I, a four (4) year sentence for his conviction on Count II, and a four (4) year sentence for his conviction on Count III. The trial court ordered that his sentences for Counts I and II be served concurrently to each other and consecutively to his sentence for Count III. Thus, the trial court sentenced Amphonephong to an aggregate, executed term of thirty-four (34) years in the Department of Correction.

[13] At the end of the sentencing hearing, the trial court informed Amphonephong that he had a right to appeal, and Amphonephong told the trial court that he wanted to appeal his convictions. The trial court told Amphonephong that it would appoint the Allen County Public Defender to perfect an appeal, and it asked his trial counsel if he "would be good enough just to make sure that the time lines [were] met initially within the thirty days" while it "promptly" notified the public defender. (Sent. Tr. 10). The trial court, however, did not appoint a public defender for Amphonephong, and no one filed a notice of appeal within thirty days of Amphonephong's sentencing.

[14] Eighteen months after sentencing, on January 13, 2014, Amphonephong tendered, with the Clerk of our Court, a pro se petition for permission to file a belated notice of appeal. Our Clerk's office sent Amphonephong a letter, informing him that any petition to file a belated notice of appeal needed to be filed with the trial court.

[15] Thereafter, on February 13, 2014, Amphonephong filed, with the trial court, a pro se petition for permission to file a belated notice of appeal. In his petition,

he asserted that the trial court should grant his petition because: (1) he had notified the trial court that he wanted to appeal but that the public defender had not filed his appeal; and (2) he has a "very limited understanding of English and cannot read but a little bit [of] English" as he "is of Asian origin" from Laos and had to "get a jailhouse lawyer to help [him] file this motion." (App. 198). Amphonephong also filed a motion to proceed in forma pauperis and an information sheet for the public defender's office and stated that he "want[ed] help with [his] appeal[.]" (App. 207).

[16] On March 3, 2014, the trial court sent Amphonephong a letter, which provided:

> I am in receipt of your Verified Petition for Permission to File Belated Appeal, filed February 13, 2014.
>
> It is of course my intent to grant that Petition. The only question I have is whether or not you in fact wish to have a Public Defender appointed on your behalf, *which the Court failed to do originally*.
>
> If you wish to be represented by counsel, I will appoint the Public Defender of Allen County promptly to proceed in this matter. If not, then you will be entitled to proceed pro se.
>
> Please inform me of your desires at your earliest convenience. Thank you for your attention.

(App. 274) (emphasis added). Subsequently, on May 15, 2014, the trial court, without holding a hearing, granted Amphonephong's petition to file a belated notice of appeal and issued an order, which provided:

> Defendant having filed his Verified Petition for Permission to File Belated Appeal on February [1]3, 2014 and further,

> Defendant having failed t[o] respond to the Court's letter of March 3, 2014, regarding the need or desire to be represented by public defender. The Court now grants Defendant[']s Petition to File Belated Appeal and further appoints the Public Defender of Allen County to perfect said appeal at public expense.

(App. 183, 275). On May 28, 2014, Amphonephong filed his notice of appeal. He now belatedly appeals one of his three child molesting convictions.

# Decision

On appeal, Amphonephong challenges the sufficiency of the evidence to supports his Class C felony child molesting conviction as charged in Count III. The State has filed a cross-appeal, challenging the trial court's grant of Amphonephong's petition to file a belated appeal. Because the State's issue is potentially dispositive, we will first address this cross-appeal issue.

## 1. Belated Notice of Appeal

The State contends that the trial court erred by granting Amphonephong permission to file a belated notice of appeal because: (1) the trial court did not comply with Indiana Post-Conviction Rule 2(1); and (2) Amphonephong did not allege or prove that he was diligent.

Amphonephong did not file a reply brief or otherwise respond to the State's allegation on cross-appeal that the trial court erred by granting him permission to file a belated notice of appeal. "In such a circumstance, if we find prima facie error, we may reverse." *Townsend v. State*, 843 N.E.2d 972, 974 (Ind. Ct.

App. 2006), *trans. denied.* "In this context, prima facie is defined as "at first sight, on first appearance, or on the face of it."  *Id.*

[20]  Turning to the State's argument, we note that Indiana Post-Conviction Rule 2(1) provides, in relevant part:

> (a) *Required Showings.* An eligible defendant convicted after a trial or plea of guilty may petition the trial court for permission to file a belated notice of appeal of the conviction or sentence if;
>
>> (1) the defendant failed to file a timely notice of appeal;
>>
>> (2) the failure to file a timely notice of appeal was not due to the fault of the defendant; and
>>
>> (3) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.
>
> (b) *Form of petition.* There is no prescribed form of petition for permission to file a belated notice of appeal. The petitioner's proposed notice of appeal may be filed as an Exhibit to the petition.
>
> (c) *Factors in granting or denying permission.* If the trial court finds that the requirements of Section 1(a) are met, it shall permit the defendant to file the belated notice of appeal. Otherwise, it shall deny permission.
>
> (d) *Hearing.* If a hearing is held on a petition for permission to file a belated notice of appeal, it shall be conducted according to Ind. Post-Conviction Rule 1(5).

[21]  A defendant has the burden of proving by a preponderance of the evidence that he was without fault in the delay of filing and was diligent in pursuing permission to file a belated notice of appeal.  *Moshenek v. State*, 868 N.E.2d 419, 422-23 (Ind. 2007), *reh'g denied*.  "There are no set standards of fault or

diligence, and each case turns on its own facts." *Id.* at 423. Our Indiana Supreme Court has explained that there are several factors that are relevant to the defendant's diligence and lack of fault in the delay of filing, including "'the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system, whether the defendant was informed of his appellate rights, and whether he committed an act or omission which contributed to the delay.'" *Id.* (quoting *Land v. State,* 640 N.E.2d 106, 108 (Ind. Ct. App. 1994), *reh'g denied*, *trans. denied*). A trial court's decision regarding whether to grant permission to file a belated notice of appeal "is within the sound discretion of the trial court." *Id.* at 422. "A trial court's ruling on a petition for permission to file a belated notice of appeal under Post–Conviction Rule 2 will be affirmed unless it was based on an error of law or a clearly erroneous factual determination." *Id.* at 423-24.

[22] The State contends that, under Post-Conviction Rule 2(1), the trial court was required to issue specific findings regarding whether Amphonephong was at fault for failing to file a timely notice of appeal and whether he was diligent in requesting permission to file a belated notice of appeal. The State asserts that the trial court erred because it did not make such express findings and that its failure to do so requires our Court to remand to the trial court for a hearing on Amphonephong's petition. In so arguing, it relies on *N.L. v. State*, 989 N.E.2d 773, 780 (Ind. 2013).

[23] The State's reliance on *N.L.*, however, is misplaced because that case involved the interpretation of the Sex Offender Registration Act in the context of a

juvenile case. In that case, our Indiana Supreme Court reviewed the Act and held that, when determining whether a juvenile was required to register under this Act, a trial court was required to hold an evidentiary hearing and to make an express finding that the juvenile was likely to reoffend. *N.L.*, 989 N.E.2d at 780. Because the trial court in *N.L.* did neither, our supreme court remanded the case to the trial court with instructions to hold an evidentiary hearing and to enter the required express findings. *Id.* at 780-81.

[24] Unlike that case, here, we are dealing with the Post-Conviction Rule pertaining to whether to allow a defendant to file a belated notice of appeal, and this Rule does not contain any language that could be construed as a mandate that a trial court must enter an express finding on the defendant's fault or diligence. Furthermore, Rule 2(1) does not require the trial court to hold a hearing on a defendant's petition for permission to file a belated notice of appeal. *See Green v. State*, 593 N.E.2d 1237, 1238 (Ind. Ct. App. 1992) (explaining that Post-Conviction Rule 2(1) "does not require the court to conduct a hearing, but [that] we have determined that one should be held where the petition raises a genuine factual dispute concerning the existence of grounds for relief"), *trans. denied*.

[25] Indeed, even if the trial court had made express findings, we would owe them no deference because the trial court did not hold a hearing before ruling on Amphonephong's petition. Where, as here, the trial court does not hold a hearing before granting a petition to file a belated notice of appeal, we owe no deference to the trial court's decision, and the review of the granting of the

petition is de novo. *Baysinger v. State*, 835 N.E.2d 223, 224 (Ind. Ct. App. 2005).

[26] The State acknowledges that Amphonephong was not at fault for failing to file a timely notice of appeal because the trial court had failed to appoint a public defender to perfect his appeal. Instead, the State contends that Amphonephong failed to allege or show that he was diligent in his request for permission to file a belated notice of appeal. The State argues that Amphonephong was not diligent because he allowed eighteen months to pass between his sentencing in July 2012 and the time he first tried to file his petition for permission to file a belated notice of appeal in January 2014.

[27] In regard to diligence, our supreme court has explained that the following factors are relevant to a determination of diligence: "the overall passage of time; the extent to which the defendant was aware of relevant facts; and the degree to which delays are attributable to other parties[.]" *Moshenek*, 868 N.E.2d at 424.

[28] Here, the record reveals that the trial court informed Amphonephong that he had a right to appeal. As Amphonephong set forth in his verified motion, he told the trial court at the sentencing hearing that he wanted to appeal his convictions, and the trial court told him that it would appoint a public defender to represent him on appeal. The trial court, however, did not appoint a public defender for Amphonephong, and no one filed a notice of appeal within thirty days of Amphonephong's sentencing. After having no contact from a public

defender and learning that no appeal had been filed, Amphonephong attempted to file a petition for permission to file a belated notice of appeal, but he incorrectly tendered it with our Court. However, once he was informed that he needed to file it with the trial court, he did so without delay. Additionally, as Amphonephong pointed out in his petition, he is from Laos, "has a very limited understanding of English[,]" "cannot read but a little bit [of] English[,]" and had to "get a jailhouse lawyer to help [him] file this motion." (App. 198). In the presentence investigation report attached to his petition, the probation officer noted that all the paperwork that Amphonephong signed for the probation department had to be read to him. Under the specific circumstances present in this case, including his timely request for counsel, we cannot say that the trial court erred by granting Amphonephong permission to file a belated notice of appeal. *See Williams,* 873 N.E.2d at 147 (concluding that "because [the defendant] requested the appointment of appellate counsel in a timely manner—which the trial court immediately granted—we further find that [the defendant] was diligent in requesting permission to file the belated notice of appeal."). Accordingly, we reject the State's invitation to dismiss this appeal and instead consider Amphonephong's appeal on its merits.

## 2. Sufficiency

[29] Amphonephong argues that the evidence was insufficient to support his Class C felony child molesting conviction relating to J.B.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative

evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Furthermore, "[a] molested child's uncorroborated testimony is sufficient to sustain a conviction." *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001), *reh'g denied*, *cert. denied*. *See also Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."), *reh'g denied*.

[30] To convict Amphonephong of Class C felony child molesting as charged in Count III, the State was required to prove beyond a reasonable doubt that Amphonephong, "with [J.B.,] a child under fourteen (14) years of age, perform[ed] or submit[ted] to any fondling or touching, of either the child or the older person, with intent to arouse or satisfy the sexual desires of either the child or the older person[.]" I.C. § 35-42-4-3(b).

Amphonephong argues that the State failed to prove that he: (1) acted knowingly; and (2) had the intent to arouse or satisfy his or J.B.'s sexual desires. He asserts that the State did not prove these two elements because J.B. testified that he was asleep. He reasons that if he were asleep, then he could not have acted knowingly or had the requisite intent.

Our Indiana Supreme Court has explained that the culpability requirement of the child molesting statute is "knowingly or intentionally." *See Louallen v. State*, 778 N.E.2d 794, 798 (Ind. 2002) (concluding that it was not error to instruct the jury that defendant could be convicted pursuant to INDIANA CODE § 35-42-4-3(b) for "knowingly or intentionally" molesting a child); *see also Cardwell v. State,* 516 N.E.2d 1083, 1086 (Ind.Ct.App.1987) ("Regardless of the fact that there is no specific mention of any criminal intent or mens rea in the relevant portion of the child molesting statute, mens rea is an element of the crime of child molesting."), *reh'g denied, trans. denied.* Here, when instructing the jury on the elements of the Class C felony child molesting charge in Count III, the trial court informed the jury that the State was required to prove beyond a reasonable doubt that Amphonephong "knowingly" performed or submitted to any fondling or touching with J.B. (App. 109). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(b). Additionally, "[t]he intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to

which such conduct usually points." *Bowles v. State,* 737 N.E.2d 1150, 1152 (Ind. 2000).

[33] Here, the evidence most favorable to the jury's verdict reveals that J.B. testified that she got into bed with Aunt and Amphonephong and that he was lying on his side facing her. While she testified at trial that she could not see Amphonephong's eyes and admitted on cross examination that she had told the child advocate that he was sleeping, she also testified that Amphonephong "put his hands in [her] pants" and "in her underwear" and touched the "[i]nside" of her "private" that she used to "[p]ee." (Tr. 148, 149). Additionally, J.B. testified that, about ten times, she "kept on putting his hands out but he kept on putting his hands back in." (Tr. 149-50). Based on the evidence of Amphonephong's conduct and the reasonable inferences therefrom, there was sufficient evidence to support the jury's determination that Amphonephong knowingly touched J.B. and did so with an intent to arouse or satisfy his sexual desires. *See, e.g.*, *Archer v. State*, 996 N.E.2d 341, 352 (Ind. Ct. App. 2013) (holding that that the victim's testimony that the defendant touched her, including inside her vagina, while the victim was in bed with her grandmother and the defendant supported a reasonable inference that the defendant intended to arouse or satisfy his desires), *trans. denied*.

[34] Amphonephong's argument is nothing more than an invitation for this Court to reweigh the evidence and judge the credibility of the witness, which we decline to do. *See Drane*, 867 N.E.2d at 146. Amphonephong made this same argument to the jury during closing argument. The jury rejected his argument

and believed J.B.'s testimony, which was sufficient to support its guilty verdict for the Class C felony child molesting conviction, and we decline to impinge upon the jury's credibility determination and weighing of the evidence. Because there is probative evidence from which the jury could have found Amphonephong guilty beyond a reasonable doubt of Class C felony child molesting as charged in Count III, we affirm his conviction.

[35] Affirmed.

Barnes, J., and May, J., concur.