## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2018, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Michael Flynn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 15, 2018

Court of Appeals Case No.
46A05-1704-CR-863

Appeal from the LaPorte Circuit Court

The Honorable Thomas J. Alevizos, Judge

Trial Court Cause No.
46C01-1510-FA-19

**Bailey, Judge.**

# Case Summary

David M. Flynn ("Flynn") appeals his convictions, following a jury trial, for child molesting, as a Class A felony;[1] two counts of sexual misconduct with a minor, as Class B felonies;[2] two counts of incest, as Class B felonies;[3] and two counts of incest, as Class C felonies.[4]

We affirm.

# Issues

Flynn raises the following two restated issues:

 I. Whether the trial court committed reversible error when it admitted into evidence Flynn's recorded statement to police.

 II. Whether the State presented sufficient evidence to support his convictions.

# Facts and Procedural History

On October 27, 2015, Deputy Neil Lachmund ("Dep. Lachmund") of the LaPorte County Sheriff's Department responded to a domestic disturbance

---

[1] Ind. Code § 35-42-4-3(a)(1) (2009).

[2] I.C. § 35-42-4-9(a)(1) (2010).

[3] I.C. § 35-46-1-3 (2011).

[4] I.C. § 35-46-1-3 (2012).

involving A.F. and one of her sisters. A.F. was so upset that Dep. Lachmund asked her older sister R.F., born May 16, 1996, to accompany them to the Sheriff's Department. During the drive, Dep. Lachmund overheard R.F. speaking to her twin sister, D.F., on her cellular telephone. He heard R.F. state that she "might have to bring up the other stuff." Tr. Vol. II at 72. At the Sheriff's Department, Detective Jennifer Rhine-Walker ("Det. Rhine-Walker") spoke to R.F. alone at one point. R.F. disclosed to Det. Rhine-Walker that "there was sexual abuse going on in the home" involving her and her twin sister, but they did not want to report it at that time. *Id.* at 81.

[5] About an hour and a half later, R.F. approached Det. Rhine-Walker and told the detective that R.F.'s sister, D.F., was on her way to the Sheriff's Department and that she and D.F. were willing to file a report. Both R.F. and D.F. gave the police statements that their father, Flynn, had sexually abused them. The police also conducted forensic interviews of the twins' younger sisters who stated they had not witnessed any abuse. Two days later, at the request of the police, Flynn drove himself and another daughter, S.F., to the Sheriff's Department to speak with the detectives. Upon his arrival, Flynn was taken into an interview room and was advised of, and waived, his *Miranda* rights. Flynn agreed to speak with Det. Rhine-Walker, and that interview began at approximately 10:50 a.m.

[6] During the October 29 interview with Det. Rhine-Walker, Flynn initially denied that he had ever had any sexual contact with his daughters. Det. Rhine-Walker paused the interview at 12:04 p.m., at which time she offered Flynn a

beverage and he requested coffee. State's Ex. 1. Det. Rhine-Walker resumed the interview at 12:08 p.m., and a sheriff's employee brought Flynn coffee. *Id.* Flynn stated to Det. Rhine-Walker that he was "starting to get sick now" because it made him "sick just to think about" the allegations.[5] State's Ex. 1 at 12:08:30. Later, Det. Rhine-Walker again paused the interview for almost one hour, from 12:21 p.m. to 1:20 p.m., during which time Flynn briefly left the interview room twice. *Id.*

[7] At 1:20 p.m., Detective Patrick Cicero ("Det. Cicero") entered the interview room and, with Flynn's unsolicited help, moved the table to the side of the room. Det. Cicero introduced himself and moved his chair closer to Flynn's chair, so that they were facing each other. Det. Cicero questioned Flynn about Flynn's sexual encounters with his twin daughters, R.F. and D.F., using different interrogation techniques, such as trust-building techniques and reading body language. At various points during the interview, Det. Cicero placed his hand on Flynn's knee, held Flynn's hand, and hugged Flynn. At various points, Flynn leaned toward Det. Cicero, grasped Det. Cicero's hand, and put his forehead up against Det. Cicero's forehead. Several times throughout the interview, Flynn began to cry. At approximately 2:40 p.m., Det. Cicero stated,

---

[5] Although Flynn contends that Det. Rhine-Walker offered him a garbage can when he told her he "was going to get sick," Appellant's Br. at 14, he does not cite to the point in the interview where those statements were made, and we are unable to locate such statements in State's Exhibits 1 or 1A.

"Let me get you something to drink, you want something to eat?" *Id.* at 2:39:44. Flynn replied, "No." *Id.*

[8] Flynn admitted to Det. Cicero that he had sexual intercourse and oral and anal sex on multiple occasions with both of his biological twin daughters when they were between the ages of fifteen and eighteen years old. Flynn stated that R.F. and D.F. had initiated each of the sexual encounters. Flynn described in detail six sexual encounters, three with each daughter. Flynn's descriptions of the times and places of most of the encounters matched R.F.'s and D.F.'s prior descriptions of the encounters. At approximately 4:00 p.m., Det. Cicero stated, "let's get some coffee, are you hungry?" *Id.* at 4:00:25. Flynn said, "No," and Det. Cicero left the room. *Id.* At approximately 4:05 p.m., Det. Cicero returned to the interview room with a coffee and a cookie for Flynn, and he encouraged Flynn to eat. Det. Cicero concluded the interview at approximately 5:30 p.m.

[9] The State charged Flynn with child molesting, as a Class A felony; two counts of sexual misconduct with a minor, as Class B felonies; two counts of incest, as Class B felonies; and two counts of incest, as Class C felonies. Flynn moved to suppress the video/audio recording of the October 29, 2015 interview of him (hereinafter, "the recording") by detectives Rhine-Walker and Cicero, and the trial court held a suppression hearing on October 3, 2016.

[10] Det. Cicero testified at the suppression hearing that he was aware that Flynn had signed a form acknowledging his *Miranda* rights and waiving those rights.

He testified that, in interviewing Flynn, he had used interrogation techniques designed to elicit confessions, which he had learned in his police training and used in his fourteen years of police experience. These techniques involved removing physical barriers—such as the table—between him and the interviewee, getting "up close and personal" to the interviewee, making the interviewee believe he is a victim of society, minimizing the interviewee's responsibility for his actions, using deception to make the interviewee believe his actions were not that bad, and assuring the interviewee that it will be better for the interviewee if he cooperates. Tr. Vol. II at 11. Det. Cicero stated that these techniques worked in his interview of Flynn. He testified that he never hurt or threatened Flynn and never promised Flynn any particular outcome, should he cooperate and/or confess. Det. Cicero testified that Flynn at no time indicated that he did not want to speak to Det. Cicero or that he wanted an attorney.

[11] Det. Rhine-Walker also testified at the suppression hearing. She stated that, prior to interviewing Flynn on October 29, she read him his *Miranda* rights and he signed the form waiving those rights. She stated that Flynn agreed to speak with her and at no time did he invoke his *Miranda* rights, refuse to speak, or request an attorney. Det. Rhine-Walker testified that Flynn left the interview room at one point to use the restroom. She testified that Flynn had two cups of coffee and a cookie during the interview.

[12] Flynn testified at the suppression hearing that his hypoglycemia "was kicking in" during the October 29 interview because he had not eaten in twenty-four

hours. *Id.* at 33. He testified that hypoglycemia sometimes caused his thought process to be cloudy.

[13] The trial court denied the motion to suppress. The court stated it would not address the issue of Flynn's alleged diminished capacity due to his alleged hypoglycemia because that was a fact question for the jury. However, the trial judge stated that he saw Det. Cicero's interviewing techniques "as trust-building," and that he saw no indications in the recording "of discomfort or protestations from [Flynn]." Tr. Vol. II at 40. The court also noted that "not only was Detective Cicero establishing trust and providing comfort, but also that the Defendant a[t] some points indicated that he wanted Detective Cicero to comfort him." Appellant's App. Vol. II at 113.

[14] Flynn's jury trial took place on October 11 through 13, 2016. The recording of the October 29, 2015 interview of Flynn was admitted into evidence without objection, Tr. Vol. II at 91, and the parties stipulated to the admission of a redacted version of the statement, as contained in State's Exhibit 1A, *id.* at 181. The recording was published to the jury.

[15] Det. Rhine-Walker testified at trial that, after Flynn was arrested, R.F. participated in two visits with Flynn at the LaPorte County Jail, both of which were video recorded. During the first visit, R.F. and her sister, C.F., were present, and R.F. spoke with Flynn. Det. Rhine-Walker testified that when she viewed the video, she heard Flynn ask R.F. to change her story. Det. Rhine-

Walker also testified that Flynn made a similar request of R.F. when she visited the second time.

[16] Det. Cicero also testified at trial regarding his October 29, 2015, interview of Flynn. Det. Ciero's testimony regarding the interrogation techniques he used was similar to the testimony he gave at the suppression hearing.

[17] R.F. testified at trial that Flynn began to sexually abuse her when they moved to LaCrosse and she was thirteen years old. She described to the jury in great detail four separate events of Flynn sexually abusing her. The first incident occurred when R.F. was thirteen. R.F. gave a detailed account of Flynn pushing and smacking her and forcing her to have sexual intercourse with him in her bedroom while the rest of the family was away from the home. Flynn told R.F. she "couldn't tell nobody," and R.F. complied with Flynn's command because she was scared. *Id*. at 125.

[18] R.F. also testified in detail about the second incident of sexual abuse that occurred when she was fifteen. At that time, Flynn accosted R.F. in the garage and forced her to have sexual intercourse with him. R.F. also gave detailed testimony about a third incident of sexual abuse that also occurred when she was fifteen. On that occasion, Flynn was alone in the home with R.F. and D.F. and he told them both to "strip." *Id*. at 130-31. When R.F. and D.F. tried "to fight against him," he said, "I can make your sisters disappear." *Id*. at 131. Flynn then had sexual intercourse with D.F. and put his finger in R.F.'s vagina.

[19] R.F. testified in detail about a fourth evening when Flynn called R.F. into his bedroom, pushed her onto his bed, pulled her clothes off, and put his penis into her anus, causing R.F. a great deal of pain. R.F. testified that Flynn also forced her to have sexual intercourse with him on other occasions that she could not remember, and he repeatedly ordered her not to tell anyone about the sexual abuse. She stated that the last incident of sexual abuse occurred in August of 2013, when she was seventeen years old.

[20] D.F. also testified at the jury trial. She gave detailed accounts of five separate instances of Flynn's sexual abuse of her. D.F. testified that the first instance occurred in her bedroom in LaPorte when she was fourteen years old and Flynn forced her to have sexual intercourse with him. D.F. described in detail a second incident that occurred when she was fifteen and at home sick with pneumonia. On that occasion, Flynn accosted her in her bedroom and again forced her to have sexual intercourse with him. D.F. testified that she was crying, as she did every time Flynn sexually abused her.

[21] D.F. testified in detail about a third instance of Flynn's sexual abuse of her when she was fifteen years old. On that occasion, Flynn forced D.F. to submit to anal sex, which she testified made her feel like she "was being torn open." *Id*. at 169. D.F. also told the jury in detail about a fourth incident in which Flynn forced D.F. to have sexual intercourse with him in the garage, and a fifth occurrence when Flynn forced her to have sexual intercourse with him in their basement when D.F. was sixteen. D.F. testified that Flynn sexually abused her

two to three times every other week, and the abuse did not cease until she moved out of the house when she was eighteen years old.

[22] Flynn also testified at his jury trial and denied all of R.F.'s and D.F.'s allegations. Flynn testified that he is hypoglycemic and did not have enough to eat on the day he was interviewed by the police. He testified that not having sleep and food "can affect [his] judgment." *Id.* at 219. He stated that "everything was just white" during the police interview, and he was in his "own personal little world" at that time. *Id.* at 220. He said that Det. Cicero "invaded [his] private space a little bit" and "that was kind of what set [him] off." *Id.* Flynn testified that "some of those things that [he was] telling Detective Cicero" related to some of his past girlfriends. *Id.* at 220-21. And Flynn testified that it made him "feel very, very uncomfortable" when Det. Cicero "got really close in [his] personal space." *Id.* at 221-22.

[23] The jury found Flynn guilty as charged on all counts. On December 1, 2016, the trial court sentenced Flynn to thirty-eight years for the Class A felony child molesting, fourteen years for each of the two counts of Class B felony sexual misconduct with a minor, four years for each of the two counts of Class B felony incest, and four years for each of the two counts of Class C felony incest. The court ordered all of the counts to be served concurrently except for one count of Class B felony sexual misconduct with a minor, which was to be served consecutively to the other counts. The result is an aggregate sentence of fifty-two years. This appeal ensued.

# Discussion and Decision

## Admission of Flynn's Confession

[24] Flynn maintains that the trial court erred in denying his motion to suppress and admitting into evidence his October 29, 2015 statement to the police, which included his confession to sexually abusing his daughters. Rather than taking an interlocutory appeal of the denial of his motion to suppress, Flynn proceeded to a complete jury trial. However, Flynn failed to object at trial to the admission of his recorded statement to the police. "It is well-established that a motion to suppress is insufficient to preserve an error for appeal. … Instead, a defendant must reassert his objection at trial contemporaneously with the introduction of the evidence to preserve the error." *King v. State*, 991 N.E.2d 612, 617 (Ind. Ct. App. 2013) (citations omitted); *see also Wright v. State*, 593 N.E.2d 1192, 1194 (Ind. 1992) (abrogated on other grounds by *Fajardo v. State*, 859 N.E.2d 1201, 1206-07 (Ind. 2007)). Because Flynn failed to make a contemporaneous objection to the admission of his statement at trial, he has waived this issue for appeal.

[25] Waiver notwithstanding, we find no error in the trial court's ruling.

> The decision to admit the defendant's statements is a matter of discretion of the trial court after considering the totality of the circumstances. When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. It is the State's burden to prove beyond a reasonable doubt that the defendant voluntarily waived his rights, and that the defendant's confession was voluntarily given.

*Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002) (quotations and citations omitted). When reviewing a trial court's ruling that a statement was made voluntarily, numerous factors may be considered as within the totality of the circumstances. Such factors include whether the statement was the result of police coercion; the length, location, and continuity of a police interrogation; and the defendant's maturity, education, physical condition, and mental health. *Id*.

[26] Flynn contends that his statement was coerced by Det. Cicero's interrogation tactics.[6] In particular, he maintains Det. Cicero's "physical contact" with Flynn rendered Flynn unable "to resist [Det. Cicero's] questions," although he does not state why that was so. Appellant's Br. at 15. However, interrogation techniques such as "good cop/bad cop," trust-building, "providing a morally acceptable answer" to the interviewee, and "blaming the victim … do not necessarily create an involuntary statement." *Wilkes v. State*, 917 N.E.2d 675, 681 (Ind. 2009) (citing *Pierce v. State*, 761 N.E.2d 821, 824 (Ind. 2002)). Rather, the court must weigh such techniques against the totality of the circumstances. *Id.*

---

[6] Flynn also contends that his statement was not voluntary because he was incapacitated by his hypoglycemia. However, factors related to diminished capacity "do not render a self-incriminating statement involuntary per se and generally go to the weight that should be accorded the statement and not to its admissibility." *Crain v. State*, 736 N.E.2d 1223, 1232 (Ind. 2000) (citing *Battles v. State*, 688 N.E.2d 1230, 1233 (Ind. 1997)). Clearly, the jury did not find Flynn's claim of diminished capacity to be credible, and we will not reweigh witness credibility or the evidence on appeal. *Miller*, 770 N.E.2d at 767.

Thus, in *Wilkes v. State*, for example, our Supreme Court held the confession was voluntary where, although the interrogating detective insisted the defendant remembered the crimes and supplied the defendant with some details, the defendant also supplied his own details, the defendant had been advised of his *Miranda* rights and signed a waiver of those rights, the interrogation lasted five hours, and the defendant was provided with cigarettes and food. *Id.*; *see also Pierce v. State*, 761 N.E.2d 821, 824-25 (Ind. 2002) (holding that police deception in the interview weighed against voluntariness but was not the dispositive factor where the totality of the circumstances showed the defendant had signed a waiver of his rights, indicated he understood those rights, did not ask for an attorney, and was not intoxicated, and where there was an absence of threats or force in the interrogation).

Here, the trial court reviewed the video/audio recording of the interview and determined that Det. Cicero's interviewing techniques were merely "trust-building," and that he saw no indications in the recording that Flynn was uncomfortable or protested the physical contact. Tr. Vol. II at 40. On the contrary, the court noted that Flynn "a[t] some points indicated that he wanted Detective Cicero to comfort him." Appellant's App. Vol. II at 113. Moreover, Flynn was read his *Miranda* warnings and signed a waiver of them; he did not ask for an attorney; he was not intoxicated or incoherent; he was not threatened or harmed; and he was repeatedly offered food and beverages. Thus, the totality of the circumstances indicated that Flynn's statement was voluntarily

given. His contentions to the contrary are merely requests that we reweigh the evidence, which we will not do. *Miller*, 770 N.E.2d at 767.

## Sufficiency of the Evidence

[29] Flynn challenges the sufficiency of the evidence to support his convictions. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[30] To support Flynn's conviction of child molesting, as a Class A felony, the State was required to prove that Flynn was over twenty-one years of age and, with a child under age fourteen, knowingly or intentionally performed sexual intercourse. I.C. §35-42-4-3(a)(1). "Sexual intercourse" is defined as "any penetration of the female sex organ by the male sex organ." I.C. § 35-31.5-2-

302. The penetration element may be proven by evidence of any penetration of the female sex organ, including external genitalia. *See, e.g.*, *Morales v. State*, 19 N.E.3d 292, 298 (Ind. Ct. App. 2014), *trans. denied*. "To sustain a conviction for child molesting or incest, proof of the 'slightest penetration' of the female sex organ … is sufficient," and penetration may be "inferred from circumstantial evidence." *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012) (quoting *Dinger v. State*, 540 N.E.2d 587, 590 (Ind. 1990)), *trans. denied*.

[31]    It is undisputed that Flynn was over age twenty-one at the time of the crimes. And R.F. provided detailed testimony describing Flynn forcing her to have sexual intercourse with him when she was thirteen years old. R.F.'s testimony was sufficient evidence to sustain Flynn's child molesting conviction. *See Amphonephong v. State*, 32 N.E.3d 825, 832 (Ind. Ct. App. 2015) (quoting *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001)) ("'[a] molested child's uncorroborated testimony is sufficient to sustain a conviction.'"); *see also*, *Hoglund v. State*, 962 N.E.2d 1230, 1238-39 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation.").[7]

[32]    To support Flynn's two convictions of sexual misconduct with a minor, as Class B felonies, the State was required to prove that Flynn was over twenty-one years of age and, with a child at least fourteen years of age but less than sixteen years of age, performed sexual intercourse. I.C. § 35-42-4-9(a)(1). Both

---

[7] Thus, to the extent Flynn asserts that there must be "physical evidence" of the sexual intercourse, Appellant's Br. at 15, he is mistaken.

R.F. and D.F. testified in detail that Flynn forced them to have sexual intercourse with him when they were fifteen years old.[8] That testimony, alone, was sufficient evidence of two counts of sexual misconduct with a minor. *Amphonephong*, 32 N.E.3d 832. Moreover, Flynn admitted in his October 29 statement that he had sexual intercourse with both R.F. and D.F. on multiple occasions when they were between the ages of fifteen and eighteen years old. And Det. Rhine-Walker testified that, during recorded jail visits, Flynn had twice asked R.F. to change her testimony.

[33] To support Flynn's two convictions of incest, as Class B felonies, the State was required to prove that Flynn was over eighteen years of age and, with a person less than sixteen years of age who Flynn knew was related to him biologically as a child, engaged in sexual intercourse or deviate sexual conduct. I.C. § 35-46-1-3(a) (2011). "Deviate sexual conduct" includes "the penetration of the sex organ or anus of a person by an object," Indiana Code Section 35-41-1-9(2) (2011),[9] and a finger is "an object" within the meaning of the statute. *See Gasper v. State*, 833 N.E.2d 1036, 1044 (Ind. Ct. App. 2005) (citing *Stewart v. State*, 555 N.E.2d 121, 126 (Ind. 1990)), *trans. denied*. It is undisputed that Flynn is R.F.'s and D.F.'s biological father and that he was aware of that fact. R.F. testified that Flynn put his finger in her vagina when she was fifteen years old, and D.F.

---

[8] R.F. testified that Flynn had sexual intercourse with her in the garage when she was fifteen years old, and D.F. testified that Flynn had sexual intercourse with her in her bedroom when she was fourteen years old.

[9] The current incest statute replaces the term "deviate sexual conduct" with "other sexual conduct." I.C. § 35-46-1-3 (effective July 1, 2014).

testified that Flynn had sexual intercourse with her when she was fifteen years old and at home sick with pneumonia. That testimony was sufficient evidence to support the two counts of incest as Class B felonies. *Amphonephong*, 32 N.E.3d 832.

[34] Finally, to support Flynn's two convictions of incest, as Class C felonies, the State was required to prove that Flynn was over eighteen years of age and, with a person who Flynn knew was related to him biologically as a child, engaged in sexual intercourse or deviate sexual conduct. I.C. § 35-46-1-3(a) (2012). "Deviate sexual conduct" includes an act involving "a sex organ of one person and the mouth or anus of another person." I.C. § 35-41-1-9(1) (2011). Both R.F. and D.F. testified in detail about occasions when Flynn forced them to submit to anal sex. That testimony was sufficient to support the two convictions of incest as Class C felonies. *Amphonephong*, 32 N.E.3d 832.

# Conclusion

[35] Flynn waived his challenge to the admission of his recorded statement by failing to make a contemporaneous objection to its admission at trial. Waiver notwithstanding, the trial court did not err in admitting that statement as the totality of the circumstances indicate that the statement was voluntarily given. And the State provided sufficient evidence to sustain Flynn's convictions; his protestations to the contrary are merely requests that we reweigh the evidence, which we will not do.

[36]     Affirmed.

Crone, J., and Brown, J., concur.