## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 03 2020, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Franklin E. Lee,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 3, 2020

Court of Appeals Case No.
20A-CR-113

Appeal from the Jackson Circuit Court

The Honorable Richard W. Poynter, Judge

Trial Court Cause No.
36C01-1804-F1-2

**Bradford, Chief Judge.**

# Case Summary

[1] In April of 2018, Franklin E. Lee molested his then-ten-year old step-granddaughter. After a jury found him guilty of Level 1 felony child molesting, he was sentenced to thirty-five years of incarceration. On appeal, Lee challenges the sufficiency of the evidence to sustain his conviction and the appropriateness of his sentence. We affirm.

# Facts and Procedural History

[2] In April of 2018, M.D. and her sisters resided in a home with their grandmother, Karen Lee, and step-grandfather, Lee. M.D. was ten years old. Lee was thirty-nine years old.

[3] On April 17, 2018, Karen left M.D. and her sisters in Lee's care overnight. M.D. observed Lee consume four beers over the course of the evening. At some point, Lee fell asleep and M.D. and her sisters were unable to rouse him before they went upstairs to get ready for bed. M.D. was awoken later that night when she "felt someone kind of touching [her] leg," moving their hand "down [her] leg." Trial Tr. Vol. II pp. 143, 144. Although M.D. did not see Lee, she believed that it was he who had touched her. M.D. went back to sleep after the touching stopped.

[4] Sometime later, Lee knocked on M.D.'s bedroom door "asking if [she] was awake." Trial Tr. Vol. II p. 145. He then asked her "if [she] wanted to go downstairs" to the patio. Trial Tr. Vol. II p. 146. M.D. accompanied Lee

outside and they sat together on a chair on the patio. Lee invited M.D. to sit on his lap, which she did. Once M.D. was on his lap, Lee "started touching" M.D.'s vagina, which M.D. referred to as her "pee area". Trial Tr. Vol. II p. 147. Lee's hand was placed under both M.D.'s pajamas and underwear. While touching M.D., Lee instructed her to "look at the sky," commenting on "how pretty it was." Trial Tr. Vol. II p. 148. Lee left his hand on M.D.'s vagina for "like two (2) minutes." Trial Tr. Vol. II p. 148. Lee and M.D. then went back inside.

[5] Once inside, Lee invited M.D. to go into his bedroom. M.D. went into the bedroom and lay down on the bed. Lee lay down next to M.D. and again touched her vagina under her clothes. Lee's fingers were "just outside the hole" where girls "pee out of." Trial Tr. Vol. II pp. 152, 151. Lee left his hand on M.D.'s vagina for "like two (2) minutes." Trial Tr. Vol. II p. 152. After Lee removed his hand, M.D. briefly fell asleep. M.D. was awoken by Lee "touching [her] butt" cheek under her clothes. Trial Tr. Vol. II p. 152. She briefly fell back asleep after Lee removed his hand. M.D. was briefly awoken a short time later by Lee again touching her vagina under her clothes.

[6] M.D. was again awoken when Lee "asked if he could do one more thing." Trial Tr. Vol. II p. 153. He "proceeded to ask [M.D.] to take off [her] pants and then [when she] didn't really do it, he just kind of took them off, [and] told [her] to raise [her] butt." Trial Tr. Vol. II p. 153. Lee then "opened" M.D.'s legs "like a double door" and started licking her vagina with his tongue. Trial Tr. Vol. II p. 154. Lee told M.D. "that everything was going to be okay" after she

asked him to stop. Trial Tr. Vol. II p. 155. Lee continued licking M.D.'s vagina for "[t]wo (2) or three (3) minutes." Trial Tr. Vol. II p. 156. After Lee stopped, M.D. went to the bathroom and "tried to kind of like clean out" her vagina, which was "wet" from Lee's "spit." Trial Tr. Vol. II p. 156. After finishing in the bathroom, M.D. went back upstairs to her bedroom. M.D. went back to sleep but was again awoken by Lee, who told her that "he was going to shoot himself and how much he hated himself." Trial Tr. Vol. II p. 157.

[7] The next morning, before taking M.D. and her sisters to school, Lee twice asked M.D. if she "was ok" and stated that he hoped she would not tell anyone. Trial Tr. Vol. II p. 159. M.D. did tell some, reporting Lee's actions to the school librarian, who then reported the incident to the Department of Child Services ("DCS"). Later that afternoon, DCS informed Karen. Karen confronted Lee. At first Lee denied any wrongdoing. Eventually, however, Lee admitted that he had "rubbed" M.D.'s vagina and "bottom." Trial Tr. Vol. II p. 181. Lee claimed to have been asleep when he touched M.D. When Karen asked Lee "how he could do something like that," Lee responded that "[h]e was sorry and he was going to go to Hell for what he had done." Trial Tr. Vol. II p. 181. Lee later texted Karen, telling her that he was sorry and asking whether Karen had contacted the police. During a subsequent interview at the Child Advocacy Center, M.D. revealed that Lee's tongue had manipulated her vaginal opening.

[8]     On April 30, 2018, the State charged Lee with one count of Level 1 felony child molesting. A two-day jury trial commenced on October 8, 2019. Lee absconded following the first day of trial. The jury returned a guilty verdict on October 9, 2019, and Lee was located and arrested in Louisville, Kentucky, a few days later. The trial court subsequently sentenced Lee to thirty-five years of incarceration.

# Discussion and Decision

## I. Sufficiency of the Evidence

[9]     Lee contends that the State produced insufficient evidence to sustain his conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). A "molested child's uncorroborated testimony is sufficient

to sustain a conviction." *Amphonephong v. State*, 32 N.E.3d 825, 832 (Ind. Ct. App. 2015) (internal quotation omitted); *see also Robinson v. State*, 446 N.E.2d 1287, 1291 (Ind. 1983) (providing that a victim's uncorroborated testimony was sufficient to sustain the defendant's conviction for child molesting).

[10] In order to prove that Lee committed Level 1 felony child molesting, the State was required to prove that Lee, who was at least twenty-one years of age, knowingly or intentionally performed or submitted to sexual intercourse or other sexual conduct with a child under fourteen years of age. Ind. Code § 35-42-4-3. "'Other sexual conduct' means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-221.5. We have previously concluded that "a finger is an object for purposes of the child molesting statute." *Seal v. State*, 105 N.E.3d 201, 209 (Ind. Ct. App. 2018). Lee does not dispute on appeal that the State proved the age requirements of Indiana Code section 35-42-4-3. He only argues that the evidence is insufficient to prove that he knowingly or intentionally performed sexual conduct on M.D.

[11] Lee asks us to re-evaluate M.D.'s testimony based upon the incredible dubiosity rule.

> This rule is applicable only when a lone witness offers inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt. To interfere with the jury's authority to judge witness credibility and evaluate evidence, the court must be

presented with testimony which runs counter to human experience and that reasonable persons could not believe…. The incredible dubiosity test is a difficult standard to meet, one that requires great ambiguity and inconsistency in the evidence.

*Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001) (internal citations and quotations omitted).

[12] Review of the record reveals that M.D.'s testimony was consistent and was partially corroborated by other evidence in the record. M.D. consistently testified that on both the patio and in Lee's bedroom, Lee touched her vagina with his fingers under her clothes and that his fingers "were just outside the hole" where females "pee out of." Trial Tr. Vol. II p. 152. M.D. also consistently testified that in Lee's bedroom, after removing her pajamas and underwear, Lee "told [M.D.] to raise [her] butt," trial tr. vol. II p. 153, "opened" her legs, trial tr. Vol. II p. 154, and "started licking" her vagina. Trial Tr. Vol. II p. 153. After Lee stopped, M.D. went to the bathroom and "tried to clean out" her vagina, which was "wet" with Lee's "spit." Trial Tr. Vol. II p. 156.

[13] Lee asserts that M.D.'s testimony should be found to be unreliable because it was "not corroborated by physical evidence." Appellant's Br. p. 14. While there is no physical evidence in the record corroborating M.D.'s account of what happened, there is ample evidence corroborating other aspects of M.D.'s testimony. The corroborating evidence includes Lee's admission to Karen and Seymour Police Detective Troy Munson that he touched M.D.'s vagina and

buttocks with his hand and Lee's admission to Karen that he "rubbed" M.D.'s vagina and buttocks and that he "was sorry and he was going to Hell for what he had done." Trial Tr. Vol. II p. 181. M.D.'s testimony was not incredibly dubious.

[14] Lee also asserts that the evidence is insufficient to prove that he acted with the requisite *mens rea*, claiming that he was asleep when he molested M.D. The culpability requirement of the child molesting statute is "knowingly or intentionally." Ind. Code § 35-42-4-3. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000). M.D. testified that on the night in question, Lee touched her numerous times in numerous locations in and around their home, including in M.D.'s bedroom, the patio, and Lee's bedroom.

[15] Lee touched M.D.'s vagina under her clothing both outside on the patio and in his bedroom and performed oral sex on M.D. in his bedroom. The jury could reasonably infer from M.D.'s testimony that Lee was awake and acted knowingly or intentionally when he committed the acts in various locations in and around the family's home. As such, we conclude that the evidence,

including the reasonable inferences that can be drawn therefrom, is sufficient to support the jury's determination that Lee knowingly or intentionally performed sexual conduct on M.D. *See Amphonephong*, 32 N.E.3d at 833 (providing that the victim's testimony regarding the defendant's actions together with the reasonable inferences therefrom was sufficient to support the jury's determination that the defendant acted knowingly when he molested the victim). Lee's challenge to the sufficiency of the evidence amounts to nothing more than a request to reweigh M.D.'s credibility and the evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) ("We do not reweigh the evidence or assess the credibility of witnesses.").

## II. Appropriateness of Sentence

[16] Lee also contends that his thirty-five-year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[17] The trial court sentenced Lee to a term of thirty-five years for his Level 1 felony child-molesting conviction. Indiana Code section 35-50-2-4(c) provides that "[a] person who commits a Level 1 felony child molesting offense … shall be imprisoned for a fixed term between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." Thus, in sentencing Lee to a thirty-five-year term, the trial court imposed a slightly-aggravated sentence.

[18] Lee presents the following argument in support of his assertion that his sentence is inappropriate in light of the nature of his offense:

> Lee's alleged conduct did not exceed the statutory elements for the offense he was convicted of. There is no evidence that Lee physically harmed or threatened to harm M.D. M.D. did not indicate that Lee had threatened her or physically restrained her. The nature of the acts Lee is alleged to have engaged in did not support the imposition of an aggravated sentence.

Appellant's Br. p. 17. We disagree.

[19] Lee violated a position of trust by molesting his then-ten-year-old step-granddaughter. Lee and Karen shared custody of M.D. and her sisters. Furthermore, Lee did not commit only one act of molestation, but rather multiple acts of molestation, in multiple areas in and around the family's home. In a letter provided at sentencing, Karen informed the trial court M.D. had suffered emotional harm as a result of Lee's actions. Karen indicated that Lee "was someone [she and her granddaughters] trusted and loved very much" before he "betrayed" them. Sent. Tr. Vol. II p. 8. Karen further indicated that M.D. "adored" Lee "and he did the unthinkable" to her. Sent. Tr. Vol. II p. 8.

As a result of Lee's actions, M.D. attends therapy, "won't sleep upstairs [in her bedroom] or alone," "is afraid of the dark," and "is very leery of others," especially men. Sent. Tr. Vol. II p. 8. M.D. informed the court the Lee "broke [her] family," stating that she "used to have a happy family like all [of her] friends, but now it is broken." Sent. Tr. Vol. II p. 9. Both Karen's and M.D.'s statements demonstrate the M.D. has suffered as a result of Lee's actions.

[20] As for his character, Lee asserts that he is a high school graduate and has earned an associate's degree. Lee claims to have a relatively minor criminal history consisting of only one prior conviction for Class A misdemeanor possession of marijuana. He also claims to have the support of his new wife and his father, who is willing to take him into his home. During the sentencing hearing, Lee's father described Lee as "honest, he was a good father, he always had a job, always provided for his family when he was married the best that he could." Sent. Tr. Vol. II p. 5. The trial court, however, was not required to accept Lee's father's testimony as proof of good character. *See Shorter v. State*, 144 N.E.3d 829, 839 (Ind. Ct. App. 2020).

[21] While Lee might have been a largely law-abiding citizen, his actions involving M.D. demonstrate poor character. Lee violated a position of trust by molesting his step-granddaughter, who was only ten years old at the time. Lee told M.D. that "he was going to shoot himself" and "hated himself" and suggested that if she told anyone about what happened, he would go to Hell. Trial Tr. Vol. II p. 157. The episode negatively impacted M.D., causing her to suffer emotional pain.

Furthermore, Lee attempted to avoid incarceration by absconding following the first day of trial. A few days after he was convicted, Lee was arrested in Louisville, Kentucky. Lee admitted that he "had devised a plan to flee to Louisville and purchase enough methamphetamine to kill himself via overdose. He had a secondary plan to attempt suicide by law enforcement and was hoping to be able to get police officers to shoot him when he was taken into custody." Appellant's App. Vol. II p. 117. Lee, however, did not kill himself but was living in Louisville at the time of his arrest. Lee's decision to abscond and attempt to avoid the consequences of his actions does not reflect well on his character. Lee has failed to convince us that his aggregate thirty-five-year sentence is inappropriate. *See Sanchez*, 891 N.E.2d at 176 ("The defendant bears the burden of persuading us that his sentence is inappropriate.").

The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.