

I N  T H E

# Court of Appeals of Indiana

Robert A. Rosenbourgh,

*Appellant-Defendant*



FILED

Sep 19 2025, 8:41 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 19, 2025

Court of Appeals Case No.
24A-CR-1576

Appeal from the La Porte Superior Court

The Honorable Jaime M. Oss, Judge

Trial Court Cause No.
46D01-2012-F4-001631

---

**Opinion by Judge Felix**
Judges Pyle and Weissmann concur.

**Felix, Judge.**

## Statement of the Case

Robert Rosenbourgh violated the terms of his probation. As a result, the trial court revoked Rosenbourgh's probation and executed the remainder of his suspended sentence. Although Rosenbourgh timely requested to appeal the revocation, counsel did not file a notice of appeal until after the deadline to do so. Between them, the parties raise several issues for our review, which we restate as follows:

1. Whether extraordinarily compelling reasons exist to warrant restoring Rosenbourgh's forfeited right to appeal;
2. Whether the trial court erred by revoking Rosenbourgh's probation;
3. Whether the trial court abused its discretion by executing the remainder of Rosenbourgh's suspended sentence.

Because we determine extraordinarily compelling reasons exist to resurrect Rosenbourgh's right to appeal, we address the merits of his appeal and affirm.

We affirm.

## Facts and Procedural History

In 2023, Rosenbourgh pled guilty to dealing in methamphetamine as a Level 4 felony. The trial court sentenced Rosenbourgh to six years, with two-and-a-half years of those years executed as time served and the remaining three-and-a-half years suspended to probation. As part of the terms of his probation, Rosenbourgh agreed to notify probation within 24 hours if he was charged with

a new criminal offense, report to probation appointments as directed, and not possess illegal drugs or other drugs without a prescription.

[4]     On January 2, 2024, the State filed a petition to revoke Rosenbourgh's probation, alleging that he violated the terms of his probation by committing a new criminal offense—dealing in a narcotic drug as a Level 4 felony—and possessing Percocet pills without a prescription. On January 10, the State filed a second petition to revoke Rosenbourgh's probation, alleging that Rosenbourgh (1) committed six new felony criminal offenses, including attempted murder, unlawful possession of a firearm by a serious violent felon, pointing a firearm at another, and unlawful possession of a handgun; (2) traveled outside the county without permission; and (3) failed to report to a December 28, 2023, probation meeting. On February 5, the State filed a third petition to revoke Rosenbourgh's probation, alleging that he committed two new criminal offenses: strangulation and domestic battery.

[5]     At a hearing on all three petitions, Rosenbourgh admitted that he failed to notify probation that he had been charged with new criminal offenses; he failed to attend a probation appointment on December 28, 2023; and he possessed Percocet pills. In addition to his admissions, Rosenbourgh's probation officer testified that Rosenbourgh did not notify her within 24 hours that he had been charged with new criminal offenses, and that Rosenbourgh failed to report to his December 28, 2023, probation appointment as directed.

[6] The trial court found that Rosenbourgh violated the terms and conditions of his probation when he (1) "failed to notify probation within 24 hours of the new offenses charged," (2) "possess[ed] the Percocet pills with no prescription," and (3) "failed to report to Probation on December 28, 2023." Tr. Vol. II at 53. The trial court revoked Rosenbourgh's probation and ordered him to serve the remaining two-and-a-half years of his suspended sentence in the Indiana Department of Correction ("DOC").

[7] After imposing the sanction, the trial court advised Rosenbourgh of his right to appeal and asked him if he was "planning on appealing." Tr. Vol. II at 56. Rosenbourgh replied, "No." *Id.* The trial court told Rosenbourgh, "So if you do change your mind, . . . and you decide that you want to appeal, please let [defense counsel] or the Court know, and then I will appoint a public defender for you, okay?" *Id.* Rosenbourgh replied, "Thank you." *Id.* at 57. Rosenbourgh's notice of appeal was due by May 20, 2024. *See* Ind. Appellate Rule 9(A)(1).

[8] On May 14, 2024, the trial court received a letter, dated May 1, from Rosenbourgh, titled "Appeal on Evidentiary Hearing Held," (the "Appeal Letter").[1] The Appeal Letter stated that Rosenbourgh was "requesting [an] Appeal Hearing" and "appeal[ing the] hearing held 4/19/2024." The trial

---

[1] Rosenbourgh did not include in his appendix on appeal the Appeal Letter he sent to the trial court in May 2024. *See* Ind. Appellate Rule 50(B). We have taken judicial notice of the contents of that letter pursuant to Indiana Appellate Rule 27.

court appointed a public defender to represent Rosenbourgh on May 15. On June 3 and June 4, respectively, appointed counsel sought and received permission from the trial court under Post–Conviction Rule 2 to file a belated notice of appeal of Rosenbourgh's probation revocation. Rosenbourgh, by counsel, filed his belated notice of appeal on July 3, 2024. This appeal ensued.

## Discussion and Decision

### 1. Extraordinarily Compelling Reasons Exist to Warrant Restoring Rosenbourgh's Forfeited Right to Appeal

[9] The State argues on cross-appeal that Rosenbourgh forfeited his right to appeal because he did not file the notice of appeal within the required thirty days, and Post–Conviction Rule 2 ("PCR 2") does not allow a belated appeal of post-conviction rulings. *See* Ind. Appellate Rule 9(A)(5). Rosenbourgh did not respond to the State's allegation that we should dismiss his appeal.[2] "In such a circumstance, if we find prima facie error, we may reverse." *Amphonephong v. State*, 32 N.E.3d 825, 829–30 (Ind. Ct. App. 2015) (quoting *Townsend v. State*, 843 N.E.2d 972, 974 (Ind. Ct. App. 2006), *trans. denied*). "In this context, prima facie is defined as at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks omitted).

---

[2] We observe that Rosenbourgh's appellate counsel sought and obtained from this court an extension of time in which to file a reply brief. However, counsel did not file a reply brief in this case.

To initiate an appeal, a party must file a notice of appeal within 30 days after entry of a final judgment is noted in the chronological case summary. App. R. 9(A)(1). "[A] party loses his or her right to appeal for failing to file timely a Notice of Appeal." *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). As our Supreme Court explained in *In re Adoption of O.R.*, this forfeiture is not a jurisdictional defect that deprives us of our authority to entertain the appeal. *Id.* In limited circumstances, a party can file a belated notice of appeal pursuant to PCR 2, but this rule does not permit a belated notice of appeal from a probation revocation proceeding. *Dawson v. State*, 938 N.E.2d 841, 846 (Ind. Ct. App. 2010), *opinion adopted*, 943 N.E.2d 1281 (Ind. 2011) (per curiam).

Rosenbourgh has forfeited his right to appeal the trial court's revocation of his probation and accompanying sanction because he did not file his notice of appeal within the required 30 days and because PCR 2 does not allow a belated appeal of post-conviction rulings. *See* App. R. 9(A)(5) ("Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided by P.C.R. 2."). However, Indiana Appellate Rule 1, which provides that we may permit deviation from the Appellate Rules, allows us to resurrect an otherwise forfeited appeal. *O.R.*, 16 N.E.3d at 972 (citing App. R. 1). To do so, the party who has forfeited its right to appeal must demonstrate that there are "extraordinarily compelling reasons" to restore the forfeited right. *Id.* at 971. To determine whether the party qualifies for this limited exception, we consider whether the party worked diligently to prosecute his appeal, *id.* at 972; the nature of the party's rights at stake, *id.*; whether there is a "unique confluence"

of factors giving rise to a strong desire to decide the case on the merits, *id.*; and any obvious injustice, *Cannon v. Caldwell*, 74 N.E.3d 255, 258–59 (Ind. Ct. App. 2017). As our Supreme Court noted in *State v. B.H.*, "[t]he narrow exception reinstating otherwise forfeited appeals effectively 'acts as a fail-safe' when dismissal would be 'shockingly unfair.'" 260 N.E.3d 953, 959 (Ind. 2025) (quoting *Sevion v. State*, 223 N.E.3d 1154, 1156 (Ind. Ct. App. 2023)).

[12] **Diligent Prosecution.** At the end of the April 19 probation revocation hearing, the trial court told Rosenbourgh that if he changed his mind about appealing the trial court's determination, he should "let [defense counsel] or the Court know," and the trial court would appoint a public defender to represent him on appeal. Tr. Vol. II at 56. Rosenbourgh's notice of appeal was due by May 20. The Appeal Letter was dated May 1, and the envelope that contained the Appeal Letter had a United States Postal Service ("USPS") barcode dated May 5. The Chronological Case Summary ("CCS") indicates that the Appeal Letter was filed in the trial court on May 14, six days before the deadline for filing the notice of appeal passed. Even if we chose to disregard Rosenbourgh's handwritten date of May 1, we cannot overlook the USPS's barcode stamped May 5. In other words, the Appeal Letter was sent 15 days before the deadline to appeal. Rosenbourgh did what was necessary to initiate this appeal.

[13] The trial court acted promptly once the Appeal Letter was received, and on May 15, appointed a public defender to represent Rosenbourgh. On June 3, appointed counsel sought permission from the trial court to file a belated notice of appeal of Rosenbourgh's probation revocation pursuant to PCR 2. On June

4, the trial court granted Rosenbourgh permission to file a belated notice of appeal. On July 3, Rosenbourgh filed that notice of appeal. It is unclear why it took Rosenbourgh's appellate counsel approximately 29 days to file the notice of appeal; presumably, appellate counsel believed she had 30 days to do so pursuant to PCR 2(1)(f) ("If the court grants permission to file a belated notice of appeal, the time and procedure for filing such notice of appeal is governed by App. R. 9(A).") and Appellate Rule 9(A)(1) (providing for 30 days to file a Notice of Appeal). Regardless, this delay does not appear to be Rosenbourgh's fault. Under these circumstances, we conclude that Rosenbourgh worked diligently to prosecute his appeal—he followed the trial court's instructions and made a timely attempt to initiate his appeal before the deadline passed.

[14] **Nature of Rights at Stake.** As for the rights at stake, Rosenbourgh experienced a loss of liberty interest when the trial court ordered him to serve the remainder of his previously suspended sentence. And Rosenbourgh's loss-of-liberty interest is significant. *See, e.g.*, *Weaver v. State*, 725 N.E.2d 945, 947 n.6 (Ind. Ct. App. 2000) (addressing appeal on merits in part because the appellant's liberty interest in not being incarcerated was at stake).

[15] Still, we are mindful of our Supreme Court's recent decision in *B.H.* and the high standard it sets for establishing extraordinarily compelling reasons to reinstate a forfeited right to an appeal. 260 N.E.3d 953. In *B.H.*, the State missed the deadline for filing an appeal from the trial court's denial of the State's request to file a juvenile delinquency petition, but the State argued that its forfeited appeal should be reinstated. *Id.* at 955–56. The *B.H.* Court

dismissed the State's appeal, concluding that the State failed to present "any extraordinarily compelling reasons to restore its right to appeal," and the State's appeal did not involve a fundamental liberty interest. *Id.* at 959.

[16] Here, however, Rosenbourgh has liberty interests at stake. Rosenbourgh experienced a loss of liberty when the trial court ordered him to serve the remainder of his previously suspended sentence in the DOC.

[17] **Unique Confluence.** Next, we examine whether there is a unique confluence of a liberty interest and other factors in this case, *O.R.*, 16 N.E.3d at 972, or any obvious injustice in not restoring Rosenbourgh's forfeited right to appeal, *Cannon*, 74 N.E.3d at 258–59. In *O.R.*, for example, our Supreme Court determined there was a "unique confluence" of the petitioner's fundamental liberty interest in parenting his child "along with 'one of the most valued relationships in our culture,'" which, in addition to his diligence in prosecuting his appeal, led the Supreme Court to conclude that the petitioner's "otherwise forfeited appeal deserve[d] a determination on the merits" and the Supreme Court, ultimately, restored the petitioner's right to appeal. 16 N.E.3d at 972. In *Cannon*, the appellant sought to file a belated notice of appeal concerning a child support modification order. 74 N.E.3d at 256. Because that order was "on its face in clear violation of the Child Support Guidelines," we concluded "that this obvious injustice is an extraordinarily compelling reason to restore [the appellant]'s forfeited right to appeal and decide the appeal on the merits." *Id.* at 258–59. Here, there is no obvious injustice in the trial court's revocation decision, so this factor works against restoring the forfeited appeal.

[18] On the other hand, here, Rosenbourgh was diligent in prosecuting his appeal, and his loss-of-liberty interest is significant. In addition, Rosenbourgh's Appeal Letter was filed with the trial court six days before the deadline for filing the notice of appeal had passed, and it does not appear that Rosenbourgh was at fault for the 29-day delay in his appellate counsel's filing of the notice of appeal. Recently, another panel of this court, faced with similar facts, also determined that the appellant's forfeited appeal should be restored. *Clemons v. State*, 260 N.E.3d 1010, 1015 (Ind. Ct. App. 2025), *trans. not sought.* In *Clemons*, the panel declined to dismiss an untimely appeal on procedural grounds where (1) the defendant tried to initiate the appeal process before the 30-day deadline had passed; (2) defendant's letter requesting assistance with his appeal took eight days to reach the trial court "for reasons largely beyond" his control; (3) the "relatively brief" delay in filing the notice of appeal did not appear to prejudice the State; and (4) addressing the merits served this court's "interests in judicial economy." *Id.* As the *O.R.* Court noted, "our procedural rules are merely means for achieving the ultimate end of orderly and speedy justice." 16 N.E.3d at 972 (internal quotations omitted).

[19] Thus, we conclude that under the facts and circumstances of this case, there is a unique confluence of a fundamental liberty interest and other factors that give rise to a desire to address Rosenbourgh's case on the merits. Based on the foregoing, "extraordinarily compelling reasons" exist here that warrant reinstatement of Rosenbourgh's appeal, *O.R.*, 16 N.E.3d at 971. We therefore

exercise our discretion under Appellate Rule 1 and address the issues Rosenbourgh raises on appeal.

## 2. The Trial Court Did Not Err by Revoking Rosenbourgh's Probation

[20] Rosenbourgh argues that the trial court erred when it revoked his probation. "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). We review a trial court's probation revocation decision for an abuse of discretion, which "occurs 'where the decision is clearly against the logic and effect of the facts and circumstances.'" *Id.* (quoting *Prewitt*, 878 N.E.2d at 188). "A probation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence." *Id.* (citing *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)). A trial court may revoke a person's probation for a single violation. Ind. Code § 35-38-2-3(a)(1); *Hammann v. State*, 210 N.E.3d 823, 832 (Ind. Ct. App. 2023) (quoting *Killebrew v. State*, 165 N.E.3d 578, 582 (Ind. Ct. App. 2021), *trans. denied*, 168 N.E.3d 741 (Ind. 2021)), *reh'g denied* (July 11, 2023), *trans. denied*, 220 N.E.3d 54 (Ind. 2023).

[21] Specifically, Rosenbourgh argues that: (a) the trial court violated his due process rights when it found a probation violation based on his failure to report his new criminal charges to his probation officer within 24 hours; and (b) the State presented insufficient evidence to support the revocation of his probation. We address each argument in turn.

### a. Due Process

Rosenbourgh's initial claim is that the trial court violated his due process rights when it found a probation violation based on his failure to report his new criminal charges to his probation officer within 24 hours. According to Rosenbourgh, his right to due process was violated because "[n]one," Appellant's Br. at 9, of the probation revocation petitions provided notice to him that the State intended to seek revocation of his probation on that basis. Rosenbourgh maintains that the petitions "only allege that [he] violated [that particular condition of his probation] by committing new crimes" and did not notify him that his probation could be revoked for failing to report the crimes to his probation officer promptly. *Id.* In fact, he was notified. For example, the first probation revocation petition reads in relevant part:

> CONDITION #1: You shall refrain from violating any law, federal, state or local. Furthermore, you shall advise the probation department within twenty-four (24) hours if charged with a Misdemeanor or a Felony.
> **The defendant allegedly committed the offense of Dealing in a Narcotic Drug Minor as a Level 4 Felony on or about the 15th Day of November 2023 (under cause 46D01-2312-F4-1792).**

Appellant's App. Vol. II at 31.

"Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment does impose procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (quoting *Cox*, 706 N.E.2d at 549). In *Woods v. State*, our

Indiana Supreme Court stated the following regarding the minimum requirements of due process provided to a probationer at a revocation hearing:

> The minimum requirements of due process that inure to a probationer at a revocation hearing include: (a) written notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses; and (e) a neutral and detached hearing body.

892 N.E.2d 637, 640 (Ind. 2008) (citing *Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992), *cert. denied*). Whether a given procedure satisfies the requirements of due process is a question of law. *Russell v. State*, 234 N.E.3d 829, 857 (Ind. 2024) (citing *Holmes v. Randolph*, 610 N.E.2d 839, 844 (Ind. 1993)), *cert. denied*, 145 S. Ct. 424. We review questions of law de novo. *Id.* (citing *State v. Moss-Dwyer*, 686 N.E.2d 109, 110 (Ind. 1997)).

[24] We are unpersuaded by Rosenbourgh's due process claim. Rosenbourgh signed the order of probation, attesting that he had read the terms and conditions of his probation and "agreed to comply with each of them." Appellant's App. Vol. II at 26. The first condition of his probation clearly provided that Rosenbourgh must "advise the probation department within twenty-four (24) hours if charged with a Misdemeanor or a Felony." *Id.* at 23. Thus, Rosenbourgh was informed that his probation could be revoked if he failed to report new criminal charges to his probation officer within 24 hours. As for the State's probation revocation petitions, the petitions clearly listed the conditions of probation that

Rosenbourgh allegedly violated, which included the need to notify a probation officer within 24 hours of any new criminal charges.

[25] Also, the State's petitions to revoke Rosenbourgh's probation were filed on January 2, January 10, and February 5, 2024, well before the probation revocation hearing held on April 19. And, importantly, Rosenbourgh has failed to demonstrate how his due process rights were denied because of the claimed lack of notice.

[26] Based on the foregoing, we conclude that the trial court did not violate Rosenbourgh's due process rights when it found a probation violation based on his failure to report his new criminal charges to his probation officer within 24 hours. The probation revocation petitions provided Rosenbourgh with notice that the State sought the revocation of his probation on that basis.

### b. *The State Presented Sufficient Evidence to Support the Revocation of Rosenbourgh's Probation*

[27] Next, Rosenbourgh argues that the State presented insufficient evidence to support the trial court's decision to revoke his probation. When faced with a challenge to the sufficiency of the State's evidence at a probation revocation hearing, "we consider only the evidence most favorable to the judgment— without regard to weight or credibility—and will affirm if 'there is substantial evidence of probative value to support the trial court's conclusion that a probationer has violated any condition of probation.'" *Murdock v. State*, 10

N.E.3d 1265, 1267 (Ind. 2014) (quoting *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995)).

[28] First, Rosenbourgh contends that the State failed to prove by a preponderance of the evidence that he failed to report his new criminal charges to his probation officer within 24 hours. He argues that the State's evidence "does not indicate *when* [he] discovered the new charges to establish that he failed to advise probation within 24 hours." Appellant's Br. at 10 (emphasis added). He claims that he was unaware of the charges and could not notify probation within 24 hours because he was incarcerated in Porter County when he learned of the charges. He also claims he "notified probation as soon as an avenue of communication was available." *Id.* at 11. We are unpersuaded.

[29] As a condition of his probation, Rosenbourgh agreed to notify probation within 24 hours if he was charged with a new criminal offense. He failed to do so. Moreover, at the April 19 probation revocation hearing, Rosenbourgh admitted to violating his probation on these bases. Defense counsel asked Rosenbourgh, if he "admit[ted]" he failed to advise probation that he was charged with new offenses, and Rosenbourgh answered, "Yes. That's correct." Tr. Vol. II at 47. While Rosenbourgh claimed it was difficult to communicate with his probation officer, he admitted he had "bonded out," *id.* at 49, and admitted waiting well over two weeks to report his Porter County and other criminal offenses, *id.* at 50. Rosenbourgh's probation officer testified that Rosenbourgh did not notify her within 24 hours that he had been charged with new criminal offenses.

[30] Likewise, we are unpersuaded by Rosenbourgh's argument that the State failed to prove by a preponderance of the evidence that he possessed Percocet pills without a prescription. Rosenbourgh admitted at the probation revocation hearing that he possessed the Percocet pills. He also admitted that at the time he possessed those pills, he had been struggling with a drug addiction.

[31] In light of these facts, we conclude that there is substantial evidence of probative value to support the trial court's conclusion that Rosenbourgh violated his probation by failing to report his new criminal charges to the probation department within 24 hours and by possessing Percocet pills without a prescription. Therefore, the trial court did not abuse its discretion by revoking Rosenbourgh's probation on these grounds.

### 3. The Trial Court Did Not Abuse Its Discretion by Executing the Remainder of Rosenbourgh's Suspended Sentence

[32] Finally, Rosenbourgh contends that the trial court abused its discretion by ordering him to serve the remaining two-and-a-half years of his suspended sentence in the DOC. We review a trial court's sentencing decision on a probation violation for an abuse of discretion. *Prewitt*, 878 N.E.2d at 188 (citing *Sanders v. State*, 825 N.E.2d 952, 956 (Ind. Ct. App 2005)).

[33] Rosenbourgh contends that "the only viable ground for [his] violation was a single missed appointment [with probation]" that occurred "while Rosenbourgh was suffering from a suspected concussion." Appellant's Br. at 13. According

to Rosenbourgh, a two-and-a-half-year sanction "is inappropriate for a missed appointment." *Id.*

[34] First, Rosenbourgh's argument is a request for us to reweigh the evidence and reassess witness credibility, which we cannot do, *see Smith*, 963 N.E.2d at 1112 (citing *Cox*, 706 N.E.2d at 551). Second, Rosenbourgh's missed appointment was not the "only viable ground" for the revocation of his probation. Appellant's Br. at 13. And Rosenbourgh did not make an argument in the alternative in case we disagreed with his earlier arguments. Having disagreed with his contention that there is only one viable reason to violate his probation, we also disagree with the argument that the resulting sentence was unwarranted. Having found three viable reasons to support the violation of Rosenbourgh's probation, we cannot say the resulting sentence was unwarranted. And based on the foregoing, we cannot say the trial court abused its discretion when it ordered Rosenbourgh to serve the remainder of his suspended sentence in the DOC. We therefore affirm the trial court's decision.

## Conclusion

[35] In sum, extraordinarily compelling reasons exist here that warrant reinstatement of Rosenbourgh's appeal. Rosenbourgh was provided sufficient notice of his probation violation allegations such that his right to due process was not violated, and the trial court did not abuse its discretion by revoking Rosenbourgh's probation or by executing the balance of Rosenbourgh's sentence. We therefore affirm the trial court on all issues raised.

Affirmed.

Pyle, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Jessica R. Merino
Wyatt, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Brandon D. Smith
Deputy Attorney General
Indianapolis, Indiana